## SUPREME COURT.

DAVID MUNROE respondent agt. CALEB N. POTTER, impleaded with OBADIAH THORNE, appellant.

It is the business of a party who takes *exceptions*, to show that the *decision is wrong*. The court will never grant a *new trial* where the decision is right upon the *whole case*, although the *reason* stated is not the true one on which the decision should have been based, or upon an isolated question which it was not even necessary to consider in order to come to a correct result upon the whole case.

Where a *surety* who is a joint maker of a promissory note with the principal, *requests the principal* to make a payment of interest on the note, and the principal makes the payment, which is indorsed on the note,

*Held*, that the act is to be regarded as the *acknowledgment* of the debt by both parties, and sufficient to take the case out of the statute of limitations. (*It seems that the Code does not affect such an acknowledgment, although the case arises under it.*)

APPEAL from judgment at special term.

The action is upon a note for $2,000, dated October 20th, 1853, payable on demand, made by the defendants, payable to the plaintiff. The defendant Potter was surety for the defendant Thorne, to whom the plaintiff advanced $2,000, the consideration of the note.

In the fall of 1857, the then last year's interest upon the note remaining unpaid, plaintiff called upon defendant Potter concerning it, and he said he would see Thorne, and the interest should be paid. Potter did go to Thorne and tell him he must pay the interest, and he thereupon paid it and it was indorsed upon the note.

Thorne, prior to October, 1858, made a general assignment to one Talcott, for the benefit of creditors; Potter was paid by Talcott a dividend on a debt owing by Thorne to Potter, about the first of October, 1858. At that time Talcott requested Potter to take to Munroe, the plaintiff, a dividend from Thorne's estate, payable on the note in suit; Potter, after some hesitation, consented to do it. He received from the assignee $202.92, the amount of the div-

idend ; and shortly afterwards sent $200 of the amount by his son-in-law, Kidder, to Munroe, with directions to tell him that Talcott sent it to him as a dividend on Thorne's note.

The evidence is conflicting whether Kidder, when he paid the money to Munroe, told him what Potter had directed.

Munroe took the $200, indorsed it on the note October 8th, 1858. Potter testified that within two weeks after this he saw Munroe, and asked him if Kidder handed him the $200, and told him it was not all of the dividend, and offered to pay him the balance, $2.92.

The court directed judgment for the plaintiff, and refused to submit the case to the jury.

The questions in the case are, whether the payment of interest in 1857, by Thorne, and the payment of the $200, under the circumstances, were in law payments by Potter. If not, then the action is barred by the statute of limitations.

SEDGWICK, ANDREWS & KENNEDY, *for appellants.*

I. To renew a debt barred by the statute of limitations, there must be a *promise* on the part of the debtor to pay the debt.

Conflicting decisions, as to the character of the evidence to establish a promise, have been made, depending in some degree upon the favor or disfavor with which courts regarded the statute.

The earlier decisions, after the statute of JAMES I, held that an *express promise* to pay the debt was requisite, and that an *acknowledgment* was not sufficient. (*Dickson* agt. *Thompson*, 2 *Shower R.*, 126 ; *Andrews* agt. *Brown*, *Price Ch. R.*, 385.)

Afterwards, under the lead of Lord MANSFIELD, the slightest acknowledgment was held to be sufficient evidence of a new promise. (*Quantoch* agt. *England*, 5 *Burr.*, 2628.)

Latterly the English and American courts have adopted the more rational construction of the statute, that the acknowledgment, to take the case out of the statute, must be clear, positive and unequivocal. (*Bell* agt. *Morrison*, 8 *Pet.*, 351; *Angel on Limitations, p.* 222.)

Before the Code (1848) in this state, the rule was the same as in England, and it was held that a new promise might be inferred:

1st. From an unconditional acknowledgment by the debtor of a subsisting debt.

2d. From a part payment by the debtor of the claim against him.

The *point* necessary to be established in either case, was *a promise* of the party pleading the statute, to pay the debt.

The promise, whether established by a verbal acknowledgment, or by payment, was equally effectual. *Payment* is no higher evidence of a promise than an *acknowledgment,* except that the act was less liable to be misconstrued. (*Smith's Leading Cases, vol.* 1, *p.* 726–7, *and cases cited; Benedict* agt. *Shoemaker,* 1 *Ker.*, 185; *Segourney* agt. *Drury,* 14 *Pick.*, 390.)

The statute of 1848 (Code) has taken from a verbal promise, any efficacy to renew a debt barred by the statute of limitations, but has not changed the effect of a *part payment,* as evidence of a promise to pay it.

It is now settled that a payment made by one joint debtor does not renew the debt as against the other, whether made before or after the statute has run. (*Shoemaker* agt. *Benedict,* 1 *Ker.*, 183.)

Therefore, the payment made by Thorne in 1857, could not operate to renew the debt as against Potter, because this case arising entirely under the provisions of the Code, Potter's alleged acknowledgment of the debt, or promise by requesting Thorne to pay the interest, if available for that purpose before the Code, was entirely insufficient, and

in fact amounted to nothing under the Code, as such acknowledgment, request or promise is by the Code required to be *in writing.* (*Esselstyne* agt. *Weeks*, 2 *Kern.*, 625.) And it is no answer to this position to say that the latter clause of § 110 of the Code provides that the section "shall not alter the effect of any payment of principal or interest," and therefore, Potter having requested Thorne to pay, it must also be considered a payment by Potter. For one or the other, either Thorne or Potter, paid the interest, as there is no pretence that it was paid partly by each. It seems to be conceded that Potter never paid a cent of money on the note, and that his only liability consists in his knowledge or request of the payment by Thorne, by which an acknowledgment of the debt, or a new promise, accrued against him. This being so, it is clear, by the authorities and the statute, that such acknowledgment, promise or request must be in writing, to bind him.

To hold that Thorne made the payment at the request of Potter, and therefore as Potter's *agent*, would enable Thorne successfully to interpose the statute of limitations on the ground that the payment being made by Potter, the principal, it was only evidence of acknowledgment of the debt as to Potter, and the acknowledgment of the debt by Thorne not being in writing, he is not liable—*payment* being evidence of a new promise only as against the joint maker who makes it—because it is held in *Winchell* agt. *Hicks*, that the doctrine is settled that "there is no mutual agency between joint debtors by reason of their joint contract, which will authorize one to act for and bind the others, so as to vary their liability." Besides, such a principle, carried out, would upset the whole doctrine of principal and surety, and perhaps of principal and agent, without reason and in the face of the rule that a mere surety is to be considered favorably by the courts.

If this view is correct as to the payment in 1857, and its effect upon Potter's liability, *a fortiori* does it apply to the

payment made in 1858, where Potter merely acted as a special agent, or more properly a messenger, in transmitting the money to Munroe from Thorne's estate.

C. B. WHEELER and D. PRATT, *for respondent.*

I. The payment of the interest in the fall of 1857, was sufficient to take the case out of the statute of limitations, as to both makers of the note. ( *Winchell* agt. *Hicks*, 18 *N. Y. R.*, 558.)

(1.) It is conceded that payment revives the demand as to the party paying.

(2.) It will not be denied that a payment made by an agent or any person authorized by the party, would be deemed a payment by the party himself, upon the maxim— "*Qui facit per alium facit per se.*"

(3.) It must now be deemed settled by adjudication that the mere relation of joint contractors does not create an agency in one to bind another by a new promise or payment. ( *Shoemaker* agt. *Benedict*, 1 *Kernan*, 176.)

But if one pays by the procurement of the other, there is no reason why the latter should not be bound upon the general principles applicable to any act done by procuration.

(4.) The payment of the interest of 1857 was clearly a payment by the procurement of Potter.

(a.) It was paid at his urgent request, in accordance with the promise which he had made to Judge Munroe, that he would see that it was paid.

(b.) It cannot be material, that Thorne was principal and had an interest in the payment of the debt.

It does not appear that he would have made this payment if Potter had not insisted on it.

(c.) The same interference with the action or conduct of another, would make a man liable as a trespasser, or for a misdemeanor.

(5.) The precise point was involved in the case of *Win-*

*chell* agt. *Hicks, ut supra.* And although it was a much weaker case than the present, yet the court decided the principle laid down in the point.

II. The payment of the $200 in the fall of 1858, was a payment by Potter sufficient to renew the note.

(1.) It is not material from whom the money comes, so long as it is actually paid by one having an interest in the payment, and for whose benefit the payment enures.

(2.) That Potter acted not merely as a messenger, but paid it as one having an interest, is manifest from the fact that he did not pay the whole amount which he received.

(3.) The money was sent to Judge Munroe by Potter, and was indorsed upon the note as a general payment. It should be deemed a payment by him and a renewal of the note.

(4.) Suppose Judge Munroe had applied the amount upon another debt of Thorne's, upon which Potter was not a surety, and had afterwards obtained Talcott's assent to such application, could not Potter have compelled it to be applied to the payment of this debt?

(5.) By the payment to Potter, the surety, and his payment to Judge Munroe, to be applied on this note, it put it out of the power of either the Judge or Talcott to divert it from such payment.

(6.) By this test it is clear that Potter was something more than a mere messenger. That he had an interest which would control the application of the money, and having such interest the law will impute the payment to him as well as to the principal in the demand.

III. The judgment should therefore be affirmed.

By the court, Morgan, Justice. I told the jury in this case, that there was no question of fact for them to decide, but that the payments and indorsements on the note under the circumstances, were sufficient to take the case out of the statute of limitations as to Potter.

Munroe agt. Potter.

The counsel for the appellant desired me to submit to the jury the question whether the last payment of interest was by Potter on his own account, or as the agent of Thorne.

This I declined. The case as settled, leaves it in some doubt whether I did not direct a verdict upon the sole ground of the last payment, and not generally upon the facts of the case as to the payments in question.

It must be admitted that the payment of interest which preceded the last payment, was made at the request of Potter, and that within the principles of the case of *Winchell* agt. *Hicks*, (18 *N. Y. R.*, 558,) this circumstance was sufficient to keep the note alive as to him, without regard to the last payment. It does not appear from the statement of the case, what disposition was made with the evidence in regard to this payment of 1857. Some question was stated in regard to the last payment, and that appears in the exceptions. There was no dispute as to the fact that Potter requested Thorne to pay the interest in 1857. If the decision had been put distinctly upon the payment of 1857, there would be no doubt of its correctness.

It is now said that the decision is right on the whole case, but cannot be sustained on the ground on which it was placed at the circuit. If this position is sound, then it may be said with great propriety, that it is safer to give a decision without reasons, than to undertake to assign them. It would certainly be unsafe to trust the appellant's counsel to assign them, if a new trial is to be granted in those cases where the decision is right, but the reason stated is not the true one on which it should have been based.

It is the business of the party who takes exceptions, to show that the decision is wrong. It is not enough that he succeeds in mystifying it, by adopting language which subjects the judge to the suspicion that he did not understand the safest ground on which to place it. It is enough that the decision is right upon the undisputed facts of the case,

whether the reason given is true or false. A new trial in such a case would do no good; but on the contrary would subject the parties to an expensive litigation to correct a theoretical error, which was not at all important to a correct decision of the question involved.

It would be sufficient, however, to induce this court to grant a new trial, if the case showed that the defendant had any way by which he could have avoided the result, if the true ground of the decision had been mentioned by the judge.

But here the evidence was closed, and it would be the merest speculation to suppose, that the circumstance of the payment of interest in 1857, could have been altered at that stage of the trial. It is not even suggested on the argument that there was any way to obviate the effect of that payment.

It will be observed, also, that the judge is made to say in his decision at the circuit, that the payment and indorsement upon the note under the circumstances, was sufficient to take the case out of the statute of limitations.

By a liberal interpretation of the language of the charge, this is referred to the last payment instead of the payment of 1857.

I have my doubts whether this liberality is to be indulged in, for the sake of helping out the appellant's exceptions. It is to be assumed that the charge of the judge is right, except in the matters complained of. If he spoke of the last payment instead of the payment of 1857, it is to be assumed that he instructed the jury correctly as to the payment of 1857; or will it be assumed that the judge ignored the evidence as to the payment of 1857? that he disregarded it? and that for the purposes of this motion it is out of the case? I think not. It should appear affirmatively by the exceptions that the appellant has been wrongfully beaten in this suit; and the counsel should, in drawing them up, point out the error, so that this court

can see that the decision is wrong upon the whole case, not merely upon an isolated question which it was not even necessary to consider in order to come to a correct result.

In my opinion, we are in danger of going too far in granting new trials, for merely technical errors, when it is evident the decision is right, notwithstanding the errors complained of.

It is enough, in my opinion, that the decision is right, however erroneous were the views of the judge who pronounced it. If this decision is right upon the undisputed facts, as to the payment of interest on the note, in 1857, it should stand, although the judge erroneously put it upon the ground of the payment of 1858.

But as it is not stated in the exceptions that the judge put the decision solely upon the payment of 1858, I think it is not to be assumed.

And as nothing is said as to the payment of 1857, in the exceptions, the presumption rather is, that the judge held correctly as to the effect of that payment. The exceptions are not suffered to state what is held correctly, but only such points as the appellant desires to controvert. If he controverts a point not necessary to a correct decision of the cause, he ought to take nothing by his exceptions.

If the court, however, should come to the conclusion that the decision is based solely upon the payment of interest on the note, in 1858, and that if it had been placed upon the payment of 1857, the defendant's counsel might have overcome the effect of the evidence, then I think we are required to look into the facts as to the payment of 1858, and Potter's admitted connection with it; and if we could see that the jury could fairly give it such an interpretation as would relieve Potter from liability, that a new trial ought to be granted.

The instruction asked for was, that if Potter was the agent of Thorne's assignee in making this last payment, he

did not thereby make himself responsible for its legal effect upon the parties who furnished the funds.

The proposition is, that one joint maker of a note may become the agent of the other in making a payment, without personal liability as to himself. If he does it as agent of the other joint maker, he does not, it is said, do it himself. It is admitted that he has an interest in the payment. If the note is not outlawed, the payment results to the benefit of both parties. At the time this last payment was made, Potter was still liable on the note, and he had, therefore, an agency coupled with an interest. His interest was a stronger legal motive for his action than his responsibility as a mere agent. He participated in the act of payment, where he had an interest sufficiently strong to account for his conduct, without clothing him with a naked agency; but he now says that he did not participate in the act of payment, except as a mere naked agent of the other joint maker. Certainly he did nothing at the time to repudiate his connection with the matter, or avoid the effect of the payment in question. He knew that the principal was. about to make a payment on the note which would benefit him and revive it as against both parties, if they both participated in it. Potter now says, " I did not participate in it, because I had no interest in it, but as a mere agent or messenger of the other party. If the note does not outlaw as to me before suit, I get the benefit of it; if it does, I repudiate the payment, and claim the benefit of the statute of limitations."

To my mind, there is something inconsistent in the two characters. Men are supposed to consult their interests, and when it is for the pecuniary interest of a man that the payment should be made by the principal debtor, and he consents to take the money and see to its application, the law will not allow him to assume that he did the act gratuitously, and not in obedience to his pecuniary interest. He cannot, in my opinion, afterwards call it a mere gratui-

tous act, without expectation of benefit to himself, because it happens in the course of time that it will turn out to his advantage to give it that construction.

The law implies a new promise to pay a debt, barred by the statute of limitations, from a bare acknowledgment of a subsisting obligation. That acknowledgment is sufficiently evidenced by the payment and endorsement of interest on the obligation. If the surety requests the principal to make a payment of the interest on the obligation, and it is accordingly made and endorsed, the act is regarded as the acknowledgment of both parties. (18 *N. Y. R.*, 558.) Formerly the law imputed the act of payment by one joint obligor as the act of both parties, on the ground of a supposed agency between them. It is now held that no such agency exists ; (*see cases cited by Judge* ALLEN *in Winchell* agt. *Hicks, above ;*) and it simply follows, that one joint maker cannot bind the other by such an acknowledgment without his consent. But it has not been held that the other joint maker is not bound, when he knows of, and assents to, the payment. If he requests it, he is bound, as was decided in the case above cited ; and I think it follows that he is equally bound, if he knows of it at the time, and does any act whatever to facilitate it.

In this case, the act was done for the benefit of Potter, as well as the principal ; for the note was not then barred by the statute. Potter knew of it, took the money to the holder of the note, and had it properly indorsed as so much paid by the principal, whose duty it was to make the payment. Grant that he was an agent ; that does not relieve him from the knowledge and approval of an act done by the principal for his benefit.

He was an agent, and more too. He had an interest, and was competent, although acting as an agent, to approve and ratify the act in question, as having been done for his benefit as well as that of the principal.

In my opinion, therefore, he was bound by the acknow-

ledgment which the act indicated, and which he partici-
pated in and approved of at the time it was done. As the
act was done for his benefit, it will be assumed that he
approved of it.

For these reasons, I think a new trial should be denied,
even if the court come to the conclusion that the decision
must rest upon the effect of the evidence of the payment of
1858.

Justices BACON, ALLEN and MULLIN concurred in the
result, on the ground first discussed in this opinion.

Judgment affirmed, and new trial denied.