# COUNTY OF OXFORD.

### ELEAZER A. HOLMES *versus* CHARLES DURELL.

If a surety on a note indorses thereon a payment as having been made by himself, the statute of limitations will be no bar to an action against him, commenced within six years from the time of such payment, notwithstanding he may have paid the money as the agent of the principal, if he did not disclose that fact.

And so, if the money thus paid was received from the sale of property pledged to him by the principal, to indemnify him against loss by becoming surety.

REPORTED from *Nisi Prius*, KENT, J., presiding.

ASSUMPSIT upon a promissory note signed by Stevens & Staples, the defendant and three others. From the case it appeared that Stevens & Staples were the principals in said note, which was of the tenor following :—"Oxford, April 18, 1848. For value received, I promise to pay E. A. Holmes, or order, three hundred dollars in one year and interest." The defendant pleaded the statute of limitations. Two of the several indorsements were admitted to be written in the hand of the defendant, and these payments purported to have been made by him.

The facts in the case, and the questions of law argued by the counsel, will be readily perceived from the opinion of the Court.

*Virgin,* for the plaintiff.

*Perry,* for the defendant.

The opinion of the Court, (the case having been argued and determined in 1865,) was drawn up by

KENT, J.—The only question in the case is, whether the payments made by the defendant, one of the signers on the note in suit, takes it out of the operation of the statute of limitations. The last payment was made within six years before the commencement of the suit, by the defendant, who himself made the indorsement of the payment, which was in money. Several payments had been made on the note—one of which was made, soon after it became due, by the defendant. This payment was less than six years before the last payment by the defendant above stated. If the payments and indorsements were operative, so far as the statute of limitations is concerned, there was no time when the statute barred an action on this note against the defendant. It also appears that the four last signers, including the defendant, were sureties for the first signers, and that this fact was known to the plaintiff when the note was executed.

It is not denied by the defendant that the payments and indorsements made by him prevent the operation of the statute, unless that result is avoided by the other fact, which he claims that he has established, viz., that the payments were made from the funds of the principals in his hands.

The result of the evidence on this point seems to be, that the defendant and other sureties on this and another note to a third party, held certain real and personal property as collateral security, which was disposed of from time to time and the proceeds applied to the payments on this and the other note. The evidence leaves the exact facts somewhat in obscurity. The defendant himself states generally, that " he did not pay his own money or funds ; that he paid nothing but money," and that the sums indorsed by him were paid from the funds of the principals. He gives no explan-

ation or statement of the facts beyond these general allegations.

It would seem probable, from the testimony of Mr. Perry, that the last payment of five dollars was made by the defendant, after he had received that sum from the sale of a gig, one of the articles held by the sureties as collateral security. When the payments were made, the plaintiff was not informed, and did not know, that the payments were made from any other money than that of the defendant's; "nothing being said, as to whose money it was."

The case, stated most strongly for the defendant, raises the question, whether such a payment, so made, takes the case out of the operation of the statute, if it is proved that the payment was made by money received by the defendant from the sale of collateral securities.

The ground on which effect is given to a partial payment and indorsement, is, that it is a distinct admission that, at the time of payment, the debt is still unpaid and subsisting. There are two parties interested in this admission and payment. The debtor is interested to have the debt diminished and in having the indorsement on the note as evidence of the fact. The creditor, who has a right to regard all the signers as equally bound to him, whether sureties or principals, is interested, not merely in the sum paid, but also in the fact that, by such payment, the party making it admits a subsisting debt at the time, which admission, as to him, will be binding for six years from its date. If, at the time of payment, the party discloses that he is paying the money of the principal, received from him for that purpose as his agent, and that it must be so regarded, then, of course, the principal only would be bound. But why should a creditor be deprived of the right, which the law gives him and which rests upon the fact that the debtor has made a voluntary payment, in person, and has indorsed the payment, as made by himself without disclosing any other fact? The creditor has a right to rest in security on the strength of such a payment and indorsement, for six years. It is, as if the debtor

had given a new note on that day. It is a fixed, statute right. But if, before the expiration of the six years from the payment, but more than that time from the first promise, a suit is instituted, is it just or legal for the debtor to then come in and say, what he ought to have said at the time, "I made this payment from the funds of the principals in my hands"?

But further, this is not a case, where the surety took money from the principal merely to carry it to the creditor. At most, it is the case where the surety has, before payment, received money from the sale of goods held as security. When this money was received by him, it became his own. He might use it for other purposes, leaving his liability on the note, and paying it at his leisure, accounting to the principal for the sum he had received from the collateral security. It was not, strictly speaking, the principals' money which he paid, but his own money. It was simply what he had obtained from his security, changed into money. If he had kept the property and paid the money on the note, would it be contended that he paid over money of the principals, entrusted to him for that purpose? Does it alter the case when the property held is changed into money and the surety pays over the same amount on the note? It is a payment by the surety.

The counsel for the defendant cites and relies upon the case of *Lime Rock Bank* v. *Mallet*, 42 Maine, 349. There are manifest distinctions between that case and the one at bar. In that case, no question arose in relation to the *statute of limitations*. The question there was, what effect a subsequent payment by a surety had upon the case, where, as it was contended, there had been an extension of credit without the assent of the surety, which operated as a discharge of the defendant before the payment. The payment had no effect to take the case out of the statute, as in this case. The plaintiff thereby acquired no fixed, legal right by the act. He was not led to rely upon the act, as one operating as a new promise. The Court say—"the

Holmes *v.* Durell.

bank was not injured by this payment through the agency of the defendant, when no longer holden on the note." The money was in fact, in that case, furnished by the principal to be paid over by the surety, which commission he executed. It was therefore considered as a payment by the principal, and the fact that no disclosure was made at the time, of the agency, was of no consequence, as the condition of neither party was affected thereby. But, in this case, when the payments were made, the debt was subsisting and the debtor liable, and, as we have seen, the plaintiff had a right to rest upon the payment by the defendant, as a renewal of his promise, which would remain good for six years thereafter, if he made no disclosure of the facts, but indorsed it as paid by himself. The plaintiff may have been thus led to delay the suit against the defendant. At all events, it very seriously affects his rights and subjects him to a total loss of his debt, if the defendant can now defeat the effect of the payments thus made, by showing that he made the payments from funds furnished to him in fact by the principals. We think that the case cited does not cover this case in the essential points named, even if we could find, on the evidence, that the money paid by the defendant was in fact the money of the principals, furnished to the surety to be directly paid over on the note. Our opinion on the case is, that the defendant must be defaulted.

*Defendant defaulted.*

*Judgment for amount due on note.*

CUTTING, DAVIS, DICKERSON and BARROWS, JJ., concurred.