## Eva A. Edwards, Appellee, v. John Harper, Appellant.

### Gen. No. 7,377.

1. LIMITATIONS OF ACTIONS—*payment on interest or principal of note as tolling statute.* A payment on either the principal or interest due under a promissory note with the knowledge, assent or ratification of the surety or joint maker will arrest the running of the statute of limitations as to both principal and interest.

2. LIMITATIONS OF ACTIONS—*revival of barred note by joint maker or surety.* A joint maker or surety on a promissory note is presumed to know the law relative to the rights, duties and liabilities on a promissory note barred by the statute of limitations and what is necessary to make him liable for the payment of such a note after it is barred, so that the question is whether what he said and did constituted a recognition of the debt and a promise to pay it.

3. LIMITATIONS OF ACTIONS—*what constitutes revival of barred note as to surety.* Where a surety on a note which had become barred under the statute of limitations received a renewal note

and sent it to his brother, the maker, to be signed, his act amounted to a recognition of the debt and he became liable therefor though the maker did not sign the new note.

Appeal by defendant from the Circuit Court of Lee county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the April term, 1924. Affirmed. Opinion filed July 24, 1924.

C. F. PRESTON and H. A. BROOKS, for appellant.

HENRY C. WARNER, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

On September 7, 1920, appellee, Eva A. Edwards, began an action of assumpsit in the circuit court of Lee county against appellant, John Harper, and James Harper, his brother, to recover the balance due upon a promissory note. Appellant, John Harper, filed a plea of the general issue, together with a plea of the statute of limitations, and that he was surety on the note; that all payments made on the note were by James Harper, without his knowledge, consent or acquiescence, and were not ratified or authorized by him; that the cause of action did not accrue within ten years of the time of the bringing of the suit. Appellee filed replications that John Harper, by his promise in writing within ten years of the time of the bringing suit, promised to pay the note; also that he ratified all payments made by James Harper. A jury was waived. There was a trial by the court, a finding and judgment for plaintiff for $1,124.50, and an appeal has been prosecuted to this court.

The case was heard upon a

"Stipulation as follows: that this action is upon a note dated March 2nd, 1892, signed by James Harper and John Harper, payable to Alonzo LaPorte two years after date for $1500.00 with interest at 6 per cent, which note was assigned by the Admr. of the LaPorte estate to the plaintiff; that interest was paid

to March 1st, 1918, that cause be submitted upon the facts herein set forth; that on May 7th, 1914, Harry Edwards, attorney for plaintiff, wrote and sent a letter to John Harper demanding payment, marked Exhibit A; that the defendant John Harper mailed a letter to said attorney which was received by him and was dated May 8th, 1914, marked Exhibit B. That on May 10th, 1914, Edwards addressed and mailed to John Harper a letter in reply to said Exhibit B, giving the date, amount and rate of interest of said note as requested by defendant in Exhibit B, that in reply to said letter of Edwards, John Harper, about May 10th, 1914, mailed a letter to Edwards, which was received by him, dated May 12th, 1914, marked Exhibit C, stating that plaintiff would give defendant Harper time to communicate to James Harper co-maker with defendant John Harper and inquiring how much time defendant John Harper desired plaintiff to wait for such purpose before taking legal steps to collect of John Harper. Letter also stated interest due on note was paid; that plaintiff was willing to let note run another year, that John Harper later addressed and mailed to Edwards a letter dated May 19, 1914, marked Exhibit D, that said Edwards addressed a letter to defendant John Harper, stating the plaintiff was willing to accept new note in the sum of One Thousand and Sixty dollars with interest at 5 per cent due in 3 years to be signed by John Harper together with James Harper, same to be settled in satisfaction of Exhibit A, that said new note was enclosed in the letter and addressed to John Harper; that John Harper sent said note to the defendant James Harper for his signature; that said James Harper refused to sign the note and returned the same to John Harper.

"It is further agreed that the payments made on said note were made by James Harper; that none were made by John Harper, none assented to or ratified by him, unless the court should hold letters above referred to operated as ratification or new promise; that John Harper did not know any of said payments had been made, that said letters may be admitted in

evidence, facts herein stated are true, that stipulation Exhibits, briefs and arguments be submitted to the court.

"Exhibit A. note $1500, dated March 2nd, 1892, payable two years after date to the order of Alonzo LaPorte interest 6 per cent. Power of attorney attached. Endorsement showing payments of interest March 1st, 1918. Payment of $500. March 4th, 1894. Payments of $10.00 Nov. 1914, and March 1st, 1917, $100.00, March 1st, 1918, $46.00.

EXHIBIT "B."

Paw Paw, Ills. May 8th, 1914.

"Mr. Harry Edwards,
    Dixon, Ills.
"Dear Sir:—

Yours of May 5 rec'd & noted. I am so surprised in regard to note you wrote me about I hardly know what to say to do. The only note I can rememeber of is one I think I signed with him years ago. It must be 20 years or more. I never heard anything from it that time till now. If that is the note you have referred to, I suppose it was paid up years ago. Why was I not notified before? You say it was a joint note. Will you please write me the form of the note & the date. Has the interest been kept up?

Yours very truly,
John Harper.

EXHIBIT "C."

Paw Paw, Ills. May 12, 1914.

"Harry Edwards,
    Dixon Ills.
"Dear Sir:—

Yours of May 9 rec'd & noted. I wish you would wait a reasonable length of time to give me a chance to see if I can't get Brother Jim to raise the int. now due so there can be little more time to see if I can't get him to fix it up in some way that will be satisfactory to you.

Hoping that you may accomodate me.

Yours truly,
John Harper.

EXHIBIT "D."

Paw Paw, Ills. May 19, 1914.

"Harry Edwards,
    Dixon, Ills.
"Dear Sir:—

Yours of recent date rec'd & noted. Now Harry I don't want to pay this note if I can help it. I am sorry you did not notify me years ago, when brother Jim was in shape to pay it. It could have been collected from him any time up to the last two years. You asked how long time I would want you to wait before you took farther steps to collect it. I would like a reasonable length of time to correspond with Jim & the boys, & see if the int. can't be paid up to March 1914. As he is a long ways from here it takes several days to get a letter back and forth. If this can't be done would you be willing to take a new note for three years for $1060.00, if I will sign the note with him at 5 per cent payable annually & that would give him a chance to work it out. I think if nothing happens they will pay it all right, if they have time to get going again. Please let me hear from you & oblige.

                                        Yours truly,
                                        John Harper."

Appellant states in his brief and argument that there are but two questions upon this appeal. "First: Is there anything in the letters in evidence which removes the bar of the statute by way of the promise to pay the debts? Second: Did the defendant John Harper at any time ratify the payments made by James Harper?"

A partial payment on a promissory note by one of several makers will not prevent the running of the statute of limitations. *Kallenbach v. Dickinson*, 100 Ill. 427; *Boynton v. Spafford*, 162 Ill. 113; *Waughop v. Bartlett*, 165 Ill. 124. But if there is a payment of either principal or interest with the knowledge, assent or subsequent ratification of the surety or joint maker, the running of the statute is arrested as to both prin-

cipal and interest.  *Granville v. Young,* 85 Ill. App. 167; *McDonald v. Weidmer,* 103 Ill. App. 390.

In *Coulson v. Hartz,* 47 Ill. App. 20, on page 27, it is said by Mr. Justice Cartwright, who at that time was a member of the Appellate Court of the Second District: ''But it is insisted that in order to remove the bar of the statute of limitations an express promise to appellee to pay the amount was essential.  It seems to be the rule that an express promise to pay is not necessary, but that an implied promise is a sufficient new promise to remove the bar of the statute. * * * It is held that a promise will be implied from an unqualified admission that the debt is due and unpaid, accompanied by nothing said or done to rebut the presumption of a promise to pay it.''  To the same effect is *Ditch v. Vollhardt,* 82 Ill. 134.  In *Wooters v. King,* 54 Ill. 343, it is held that it is not essential to give effect to a new promise to pay a debt, so as to save the bar of the statute of limitations, that it shall be an express promise.  Any language of the debtor to the creditor, clearly admitting the debt to be due and unpaid and showing an intent to pay, will be considered as an implied promise to pay.  In *Schmidt v. Pfau,* 114 Ill. 495, it was held that an admission of a party that he owed another for services rendered within five years before action brought will take a case out of the statute of limitations.  In *Walker v. Freeman,* 209 Ill. 17, it was held that: ''To take a case out of the statute the new promise need not be an express promise to pay.  If the debtor clearly admits the debt to be due and unpaid and uses language of an intention to pay, it will be considered as an implied promise sufficient take the case out of the statute,'' and that whether there is a new promise, is a question of law for the court.  In *Abdill v. Abdill,* 292 Ill. 234, it was said: ''No formal set of words is necessary to constitute an acknowledgment of a debt and a promise to pay it.  An absolute acknowledgment of the

continuance of the debt and a promise to pay it is sufficient, and any language of the debtor to the creditor clearly admitting the debt and showing an intention to pay it will take the case out of the statute.''

Appellant is presumed to know the law relative to the rights, duties and liabilities of the maker of a promissory note barred by the statute of limitations, and what acts and promises are necessary to make him liable for the payment of such a note after it has been so barred. *McDonald v. Weidmer, supra.* All of the things which appellant said and did which it is now claimed constitute a recognition of the debt and a promise to pay are, in contemplation of law, supposed to have been said and done with full knowledge of his rights, obligations and liabilities under the law, and what was necessary to renew his obligation. The question, therefore, is whether or not what he said and did constituted a recognition of the debt and a promise to pay.

The note was dated March 2, 1892, and was due two years after date. Section 16, chapter 83, of the statute [Cahill's Ill. St. ch. 83, ¶ 17], provides that actions on promissory notes shall be commenced within ten years next after the cause of action accrues, but if any payment or new promise to pay shall have been made or any note within or after the said period of ten years, then an action may be commenced at any time within ten years after the time of such payment or promise to pay. If no payment had been made on this note, and no new promise to pay had been made after the note was due, then it would have been barred by the statute of limitations ten years after March 2, 1894. On March 4, 1894, $500 was paid on the principal, and the interest had been paid from the date of the note until March 2, 1913. These payments were made by James Harper, and it is not claimed that John Harper had anything to do with them, or had any knowledge that they had been made. Under these

circumstances, any payment which was made by James Harper would not arrest the running of the statute of limitations as to John Harper unless he afterwards acquiesced in such payment. On May 7, 1914, Edwards, the attorney for appellee, wrote to appellants demanding payment, and Exhibit ''B,'' written May 8, 1914, was received in reply. There is nothing in this Exhibit which can be construed as a recognition of the debt, or a promise to pay. On May 10, Edwards again wrote to the appellant, describing the note as requested by appellant, and Exhibit ''C,'' dated May 12, was received in reply from appellant, in which he asked for a reasonable time to see if he could not get his brother to raise *''the interest now due,''* and ''to get him to fix it up in some way satisfactory to you.'' In this letter there was no denial of the debt or a repudiation of it, but there was a seeming acquiescence in it, and an acknowledgment that there was interest due, together with an appeal for time to get the brother to pay the interest which the letter stated was due, and also to get him to pay the entire debt. If this letter is read in the light of the presumption of law that the appellant knew his rights and liabilities under the statute of limitations, it comes very close to being a recognition of the existence of the debt. In reply to Exhibit ''C,'' Edwards stated that appellee would give appellant time to communicate with his brother, and Edwards asked appellant how much time appellant wanted for that purpose; that appellee was willing to let the note run another year. On May 19, appellant mailed to Edwards Exhibit ''D,'' in which he said he did not want to pay the note. He asked for a reasonable time to correspond with his brother and see if the interest could not be paid to March, 1914, and he asked if Edwards would be willing to take a new note for three years for $1,060, signed by appellant and his brother, giving the brother a chance to work it out. He stated that if nothing happened the brother would

pay it all right. In reply to this, Edwards wrote to appellant stating that appellee was willing to accept a new note for $1,060, due in three years, signed by both, the same to be in settlement and in satisfaction of the old note. A new note was made out, mailed to appellant, was received by him, and sent by him to his brother, who refused to sign it, and he returned it to appellant.

These three letters written by appellant to Edwards must be construed not only by what was said in them, but they must be construed in the light of all the facts and circumstances surrounding the parties at the time they were written, and by what was done by the parties. It is true appellant said he did not want to pay the debt. That statement is not controlling or decisive of the question. No one, if he can avoid it, wants to pay a debt which is not his, especially a security debt. But that statement cannot be construed as a denial of the debt, or that it is due, or a refusal to pay. On the contrary, there is an apparent recognition of the debt, and the liability of the appellant to pay it. He asked for more time so he could communicate with his brother and try to get him to pay the interest which was due, and also the principal. While appellant does not in so many words ask Edwards to send him a note for $1,060, yet when Edwards did send him a note, appellant sent it to his brother to get it signed. He not only recognized the debt as existing, but he was ready to pay it, and we think he had impliedly agreed to pay it when he received the new note and forwarded it to his brother. If he did not recognize the debt, his liability and willingness to pay it, why would he send the new note to his brother? The only reason he did not sign the note was that his brother refused to sign it. It was not necessary for his brother to sign a new note in order to make appellant liable. If appellant had signed the new note there would be no question of liability. If he made up his mind to sign it, and sent the

note to the brother, the mere fact that the brother did not sign it would not relieve him of the promise which he had made to pay the debt. All he was required to do to make him liable was to recognize the old debt, and by implication promise to pay it. This, we think he did, and for that reason he became liable, and the court was not in error in so holding.

In *McDonald v. Weidmer*, 103 Ill. App. 390, certain payments of interest, together with one payment on the principal of $100, had been made by one joint maker of a note. The creditor informed the co-maker of the $100 payment, and the co-maker replied that he "was glad of it and hoped he would get all of it out of him." New notes were executed which the co-maker was to sign with the principal, but which he did not sign. The court held that the language used by him was not the expression of dissent or disapprobation, but was the language of approval and satisfaction, and in considering the statement of appellant with reference to the $100 payment in connection with his subsequent statements and actions, the court held that appellee assented to and ratified the $100 payment previously made, and that he was liable on the note.

For the reasons indicated the judgment will be affirmed.

*Judgment affirmed.*