OSCAR ERICKSON AND ANOTHER v. F. W. HUSEMOLLER AND OTHERS.[1]

March 9, 1934.

No. 29,748.

[1] Reported in 253 N. W. 361.

178

*Thompson, Hessian & Fletcher* and *John J. McKasy,* for appellant.
*Sasse, French & Dunnette,* for respondents.

*I. M. OLSEN, Justice.*

Defendant John Baumgartner appeals from an order denying his motion for a new trial.

Plaintiffs brought the action to recover on a promissory note given to them by F. W. Husemoller, Clara Husemoller, his wife, and

John Baumgartner. The Husemollers did not answer or defend, and judgment on default was entered against them. John Baumgartner answered and, after trial by jury, a verdict was returned against him. He is hereinafter referred to as the defendant. The original indebtedness was for building material and a heating plant sold by plaintiffs to F. W. Husemoller in 1923, evidenced by two promissory notes given by him to plaintiffs, one for $707, due in March, 1924, and one for $190, due in December, 1924, with interest at the rate of eight per cent per annum. The note sued upon was given in August, 1924, dated August 4, and, as stated, was signed by the two Husemollers and the defendant. It was due August 4, 1925, and bore interest at the rate of six per cent per annum. The new note was given to take up the two prior notes. In taking the new note plaintiffs granted a reduction on the principal of the two prior notes, threw off the interest up to that time, and granted a reduction of the interest rate from eight to six per cent. F. W. Husemoller is referred to in the evidence as Fred. He is defendant's son-in-law.

■ The defendant claims that there was no consideration for his signing the note. Specifically, the claim is that before he signed the note it had been signed and delivered unconditionally to plaintiffs and accepted by them so as to become effective, and that, two or three days thereafter, it was signed by him without any new or further consideration to him. The evidence on the part of the plaintiffs is that the plaintiff J. E. Erickson, who obtained the new note, agreed to reduce the interest and threw off part of what was owing on the prior notes on condition that defendant sign the new note with the Husemollers, and that the note was not accepted until so signed. This is corroborated to some extent by the testimony of defendant and F. W. Husemoller. Defendant testified that when the note was first presented to him for signature it bore eight per cent interest; that he said, "I never signed a note * * * for eight per cent, and I wouldn't sign this one if I had to"; that Erickson said he would make the interest smaller; that defendant then asked him to go over to Husemollers and get Clara to sign; that defendant then accompanied Erickson to Husemoller's farm, where

the note was signed by them, with the interest rate fixed at six per cent; that defendant refused to sign that day; that Erickson saw him again a day or two later, and defendant then signed the note. Plaintiffs testified that shortly thereafter the two prior notes were surrendered to Husemoller.

F. W. Husemoller testified that the interest was reduced in consideration of the defendant, his father-in-law, signing the new note. The note itself is *prima facie* evidence of consideration as to all the signers thereof. 2 Mason Minn. St. 1927, § 7067. There was sufficient evidence of consideration as to defendant Baumgartner.

The burden of proof rested on defendant to prove want of consideration. McDonald Brothers Co. v. Koltes, 155 Minn. 24, 192 N. W. 109.

■ It is contended that the court erred in its charge on the question of want of consideration. Some parts of the charge may be open to criticism for failure clearly to distinguish between the conceded consideration for the note as to the Husemollers and the issue as to whether the note was unconditionally delivered to and accepted by the plaintiffs, so as to take effect, before it was signed by defendant. But the court, when charging as to consideration, started out by saying:

"The first defense interposed by him is that no consideration exists for his signing of the note, that it was signed by Fred Husemoller and Clara some days before he signed it, and that it was accepted by the Ericksons, and that after some days had elapsed J. E. Erickson procured John Baumgartner's signature, and that it was signed wholly without consideration."

With this clear statement of the issue on the question of consideration, the jury could not reasonably be misled. At the close of the charge defendant's counsel suggested that the charge did not fully cover the point, and the court again clearly restated the contentions of the parties on the issue of consideration and said that if there was no consideration and if the note was in fact delivered unconditionally before defendant signed then there would be no consideration as against John Baumgartner and that would mean a

verdict in his favor. The charge was sufficiently clear and correct on this issue.

■ Defendant alleged by his answer that the note was obtained from him by fraudulent representations. He testified that plaintiff J. E. Erickson induced him to sign the note by saying: "I don't want you to sign it on account of I want to get the pay out of you; I won't try to get one cent out of you; I just want you to sign to make the note look good on the probate of my father." There is corroborative evidence by the Husemollers to statements by Erickson to the same effect at a later day but before defendant signed. Plaintiff J. E. Erickson denied making any of these statements. At most there was a question of fact for the jury on this issue. We do not find any material or reversible error in the court's charge on the question of fraud, and there is evidence sustaining the verdict on that issue.

In effect, what these representations amounted to, if made, was that defendant would not be held liable on or be required to pay the note. Such representations are in direct conflict with the terms of the note and are not available to vary its terms.

■ The statute of limitations is pleaded as a bar to recovery against this defendant. The note, as stated, was due August 4, 1925. This action was commenced in the summer of 1932, more than six years after the due date of the note. In the complaint it is alleged that payments were made on the note after August 4, 1926, so as to toll the statute. The evidence is that payments of interest were made on the note in 1926, 1928, 1929, and 1931. F. W. Husemoller took the money for each of these payments to the plaintiffs. The evidence on the part of the plaintiffs is, in substance, that they were seeking payment of the note; that J. E. Erickson had a number of conversations with defendant about payment of the note and demanded payment and that defendant each time said he would see Husemoller and get him to make payments; that after such conversations Husemoller would come in and make small payments and would inform plaintiffs that defendant, his father-in-law, had been after him to urge him to make payments; that in one conversation with defendant he stated that plaintiffs would not have

gotten these payments if it had not been for his help in getting after Fred and that he had seen Fred repeatedly to get payments made.

The important question raised is whether these payments so made can be held to be payments such as to toll the statute as to defendant Baumgartner. We have no decision by this court directly in point on the facts. There are statements in some of our cases indicating to some extent the view of this court.

It must be borne in mind that these payments were all made before the six-year limitation had expired. None were made afterwards. So, when the payments were made, the note, even if no payment had been made thereon, was a valid and enforceable obligation of this defendant. It was not a case where a payment was made on an outlawed debt. In a real sense, each payment inured to the benefit of defendant as well as the other signers of the note. In that situation, there is not much force in the argument that a new contract or agreement is required when the payment is made. In the case of Willoughby v. Irish, 35 Minn. 63, 66, 27 N. W. 379, 380, 59 Am. R. 297, cited by plaintiffs, the court laid stress upon the statements in Bell v. Morrison, 1 Pet. 351, 371, 7 L. ed. 174, quoting what Judge Story said as follows:

"The revival of a debt supposes that it has been once extinct and gone; that there has been a period in which it has lost its legal use and validity. The act which revives it is what essentially constitutes its new being, and is inseparable from it. It stands, not by its original force, but by the new promise, which imparts vitality to it."

It is clear that Judge Story is here speaking of payments made after the note or contract has been barred and has so remained up to the time the payment is made. He is not speaking of payments made prior to the expiration of the limitation period. Other cases cited have no special application on this question. In Hartnagel v. Alexander, 183 Minn. 31, 235 N. W. 521, the payment was made after the debt was barred.

We have, as stated, expressions in some of our cases bearing on the question of under what fact situation one comaker is bound by

payments made by the other so as to toll the statute as to both. In Pfenninger v. Kokesch, 68 Minn. 81, 82, 70 N. W. 867, 868, Justice Mitchell writing the opinion, it is stated:

"In order to prevent the running of the statute, a payment must have been made by the debtor in person, or for him by his authority, or for him and in his name without authority and subsequently ratified by him. * * * We have examined the record in vain for any evidence, introduced or offered, that these payments were made by the procurement of the defendant, or for him, or in his name, or that he ever ratified them as payments made for him or in his behalf."

In our present case, at the time payments were made defendant was legally liable on the note. He went to his comaker and directed and induced him to make the payments. He thereby paid his own indebtedness as well as the indebtedness of his son-in-law. He knew that the payments were being made and clearly consented thereto. We think that he procured them to be made for himself as well as for. his son-in-law. It was to his interest to have the payments made, and he induced the making thereof. In Kranz v. Kranz, 188 Minn. 374, 375, 247 N. W. 243, it was held that, six years having expired after the due date of the note and no payments having been made thereon by defendant "and none having been made directly or indirectly by his procurement," the statute had run in his favor.

Applying the rule stated in Willoughby v. Irish, 35 Minn. 63, 27 N. W. 379, 59 Am. R. 297, that the payment must be made by the comaker of the note for defendant by his authority, or for him without authority and ratified by him, or made by his procurement, the jury was justified in finding that the note was not barred as to defendant. Plaintiffs cite Winchell v. Hicks, 18 N. Y. 558, and Gillitzer v. Ducharme, 203 Wis. 269, 234 N. W. 503. The question of in what fact situation payment by one of the makers of a note tolls the statute as to his comaker is very exhaustively treated in the note to Fidelity & C. Co. v. Planenscheck, 71 A. L. R. 331. Under the old common law rule in England, since changed by statute,

it was held that a part payment by one joint or joint and several debtors, without anything more, was effectual to take the case out of the statute of limitations as to his coöbligors. That rule has been repudiated in a majority of the state courts and is not followed in this state. It is still the rule in eight or nine states and in some of the Canadian provinces. In some states the rule has been abrogated by express statute.

The note in 71 A. L. R. subd. c, commencing on p. 399, has this text statement:

"It appears to be held generally that if one joint debtor knows and consents to a payment by another joint debtor, or directs or requests another joint debtor to make a payment, or ratifies such payment, that will interrupt the running of the statute of limitations as to him."

The following cases are cited to sustain the text note: Granville v. Young, 85 Ill. App. 167; McDonald v. Weidmer, 103 Ill. App. 390; Adams v. Douglas, 128 Ill. App. 319; Edwards v. Harper, 234 Ill. App. 296; Nicholas v. Porter, 181 Ind. 332, 103 N. E. 842, Ann. Cas. 1916D, 326; Holmes v. Durell, 51 Me. 201; Tainter v. Winter, 53 Me. 348; Mainzinger v. Mohr, 41 Mich. 685, 3 N. W. 183; Borden v. Fletcher's Estate, 131 Mich. 220, 91 N. W. 145; Whipple v. Stevens, 22 N. H. 219; Winchell v. Hicks, 18 N. Y. 558; Munro v. Potter, 34 Barb. 358, 22 How. Pr. 49; Pitts v. Hunt, 6 Lans. 146 (affirmed, 61 N. Y. 637); Haight v. Avery, 16 Hun, 252; In re Hallenbeck, 119 App. Div. 757, 104 N. Y. S. 568; Littlefield v. Littlefield, 91 N. Y. 203, 43 Am. R. 663; Akin v. Van Wirt, 124 App. Div. 83, 108 N. Y. S. 327; Roles v. Roles, 58 N. D. 310, 225 N. W. 809; Glick v. Crist, 37 Ohio St. 388; Schreiner v. City Nat. Bank, 76 Okl. 76, 183 P. 905; McConnell v. Merrill, 53 Vt. 149, 38 Am. R. 663; Green v. Morris, 58 Vt. 35, 4 A. 561; National Bank v. Cotton, 53 Wis. 31, 9 N. W. 926; Coleman v. Ward, 85 Wis. 328, 55 N. W. 695.

In Michigan there appears to be now a statute limiting the effect of such a payment, and in New York there is some conflict in the cases. Otherwise, no case is cited which holds contrary to the text note. The facts which were before the jury in the present case bring it well within the authorities on this point.

Defendant cites Atwood v. Lammers, 97 Minn. 214, 106 N. W. 310. The case was decided on the ground that there was no evidence to show that payment in question was authorized, consented to, or known of by the defendant, or ever ratified by him. In our present case we have evidence that defendant requested, consented to, and procured the payments to be made. In the Atwood case also the payment was made after the note was barred.

■ Errors are assigned upon parts of the charge of the court on the question of the application of the statute of limitations and the refusal of the court to give an instruction requested by defendant. The court charged as follows:

"We have a statute in this state—probably most of you are familiar with it—that a note outlaws in six years from the due date. In other words, there is a legal conviction that if a note goes for six years after it is due, that the law presumes it to have been paid."

The court used the word "procured" in reference to what it was necessary to show as to what defendant had done in regard to these payments. The word has a broad meaning. Among other things, it means to get, to bring about, to effect, to cause. Standing alone, the word might not be entirely definite in meaning. But by the next preceding sentences of the charge, wherein the court, after stating defendant's claim, said: "That is denied by the Ericksons. It is their contention that all of these payments were procured and brought about by John Baumgartner, that he obtained, procured, induced his son-in-law, Fred Husemoller, to make the payments, so there is an issue, a square controversy on the facts again," the meaning is made clear. In charging the jury the court applies the law to the evidence in the particular case. It is not required to formulate rules applicable to different evidentiary facts or to cover all cases in which the same issue may arise on different evidence. The fact that the court, at the end of the paragraph, said that this court in a recent decision had stated, in substance, that if the payments were made directly or indirectly by the procurement of a signer such as John Baumgartner the statute does not in that case outlaw the note, did not modify or change what had already been

charged. The jury had heard the evidence and knew what plaintiffs' exact claim was. They knew that unless they found that plaintiffs' evidence on the question was true the defendant was entitled to a verdict. The jury could not have been misled. Defendant did not request the court to give any further definition of the word "procure."

■ The defendant requested the court to charge in practically the exact words used in a statement by the court in the case of Pfenninger v. Kokesch, 68 Minn. 81, 70 N. W. 867, 868, that:

"In order to prevent the running of the statute, a payment must have been made by the debtor in person, or for him by his authority, or for him and in his name without authority and subsequently ratified by him."

But this statement is amplified in a following sentence in that opinion, where the court said [68 Minn. 82]:

"We have examined the record in vain for any evidence, introduced or offered, that these payments were made by the procurement of the defendant, or for him, or in his name, or that he ever ratified them as payments made for him or in his behalf."

The evidence in the record in the present case is very different, and the trial court was not required to give the requested instruction after it had given instructions more applicable to the evidence as here presented.

■ The court, at the beginning of its charge, said that the introduction of the note in evidence and proof of the payments indorsed thereon made out a *prima facie* case for plaintiffs. Atwood v. Lammers, 97 Minn. 214, 106 N. W. 310, is cited as authority for the statement that indorsements of payments on the back of a note are not evidence that a joint maker of the note made such payments. If logically applied, this statement results in a holding that where payments are indorsed on a note given by two or more makers, without designating in the indorsements by whom they are made, as was done here, the indorsements are not evidence that any of the makers made the payments. No case so holding has been

187

cited, and we do not now take the time to search out authorities on the question. In the Atwood case, 97 Minn. 214, 216, 106 N. W. 310, the indorsement was in these words:

"Paid on within, Aug. 11th, 1902, by Emil Kreuger, for the purpose of renewing this note, $5.00, at the request of N. D. Lammers."

There was no oral evidence offered and nothing to show by whom or under what circumstances the indorsement was made. The note was outlawed at the time the payment was made. The indorsement was held sufficient to charge Kreuger, but insufficient, without other evidence, to show that Lammers had in any way authorized the payment. The fact that the note was already outlawed, so that a new agreement or promise was required to revive it, was emphasized.

The court in our present case clearly charged that the plaintiffs had the burden of proof to show by a preponderance of the evidence that John Baumgartner did in fact procure the payments indorsed on the note to be made. If there was any error in the preliminary statement as to making out a *prima facie* case, it was cured.

■ Other objections to the court's charge are made. They have been examined and found not to require particular mention or discussion.

The order appealed from is affirmed.

*DEVANEY, Chief Justice,* absent in attendance upon board of pardons, took no part.