## PETER GREVE v. STATE BANK OF WORTHINGTON.[1]

October 31, 1941.

No. 32,880.

*E. J. Jones* and *E. H. Nicholas,* for appellant.
*Arnold W. Brecht,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Defendant appeals from an order denying its motion for judgment *non obstante* or a new trial.

On April 13, 1932, plaintiff, his son Ben, and the latter's wife executed and delivered to defendant their promissory note for $3,615, due six months after date and bearing interest at the rate of eight per cent per annum. The note was secured by a chattel mortgage executed by Ben and wife covering livestock, farm machinery, and a 1929 Ford automobile.

Ben operated a farm near Wilmont in Nobles county. On February 12, 1934, he held an auction and sold all of the personal

[1]Reported in 300 N. W. 594.

property covered by the mortgage except the automobile. The proceeds from the sale were applied on the note, as were the proceeds from some of the livestock previously sold. Ben testified that before the auction Mr. Jones, president of the bank, told him that he might keep the car, but shortly after the sale Jones said "he had to have the car." A few days later Ben moved to St. Paul. Before leaving he instructed his brothers to deliver the automobile to Spillman's garage in Worthington for sale. They did so on February 19, 1934. The record is silent as to the circumstances of the sale. On the day the car was delivered, plaintiff, who was at the garage at the time of delivery, took to the bank the sum of $30, purporting to represent proceeds from the sale, and turned it over to Jones, who endorsed on the note: "Pd Feb 19 1934 Car by Peter G . . . . 30—." Plaintiff testified: "I brought the check up to Jones and told him that is the money for the car, for Ben's car, and that is all that was said, and he said, 'Thank you.'" He also testified that he took the $30 to the bank because "it was mortgaged property."

Jones' version of the transaction was: "Mr. Peter Greve came in and stated that he owed Ben $30 on a car. My recollection is he said, talked about, now I would not be sure about that, but he said he owed Ben $30 on a car and he wanted that endorsed on the note and he gave me the $30."

Lloyd O. Patterson, cashier of the bank, testified that he was present at the time the payment was made, and that plaintiff brought $30 in currency to the bank and handed it to Jones, saying: "Put this on the note," and that Jones did so in plaintiff's presence.

On February 7, 1940, plaintiff had on deposit in defendant bank approximately $8,000. On that day the bank charged his account with $3,689.95, which it applied to the payment of the unpaid balance on the note and interest. Its right to do so depends upon whether the $30 item credited on the note on February 19, 1934, tolled the running of the statute of limitations as to plaintiff. This

action is to recover the amount claimed to have been wrongfully charged against his account.

The trial court was of the opinion that the evidence presented an issue for the jury as to whether plaintiff voluntarily made the payment or whether he merely acted as a messenger for Ben in delivering the money to the bank, and that recovery depended upon whether the jury accepted plaintiff's or defendant's version of what took place at the time of the payment. The case was submitted to the jury upon that theory, and a verdict was returned for plaintiff.

Defendant contends that there was no issue for the jury; that upon plaintiff's testimony it was entitled to a directed verdict. It relies upon decisions of this court to sustain its contention, particularly Erickson v. Husemoller, 191 Minn. 177, 253 N. W. 361, and Ross v. Simser, 193 Minn. 407, 258 N. W. 582.

All that was said in Erickson v. Husemoller, *supra,* was in support of our decision there that there was evidence to sustain the verdict, and hence that the order denying a new trial should be affirmed. There was no intimation in that case that the question was one of law rather than fact. In Ross v. Simser, *supra,* the directed verdict was sustained because so plainly the defendant, claiming the benefit of the statute, had made the payment as her own.

Decision here must adhere to the principle of Wolford v. Cook, 71 Minn. 77, 78, 73 N. W. 706, 70 A. S. R. 315, that the payment which will take a case out of the statute is one which "amounts to an acknowledgement of the existence of the debt, from which the law implies a new promise to pay the balance." That ordinarily requires a payment voluntarily made by the one sought to be charged for the unpaid residue. The implication necessary to recovery cannot arise from an involuntary payment under the compulsion of law.

Payment by one joint debtor does not, standing alone, bind a coöbligor and prevent the running of the statute of limitations as to him. Willoughby v. Irish, 35 Minn. 63, 27 N. W. 379, 59 Am. R. 297; Pfenninger v. Kokesch, 68 Minn. 81, 70 N. W. 867. The

payment, to bind a coöbligor, must be under the authority of or procured by the coöbligor. Erickson v. Husemoller, *supra*.

In the present case, the payment did not come from plaintiff's money. It was the proceeds from the sale of an automobile upon which defendant had a chattel mortgage. While plaintiff was under no compulsion to take the money into his possession, having done so, he was bound to turn it over to the bank. In any event, there was a fact issue as to whether he acted in his own behalf and in his own interest or merely as a conduit or messenger for Ben.

There is evidence from which the jury could find that Ben had delivered the car to the garage to have it sold for account of the defendant and that it was sold and the proceeds applied pursuant to Ben's agreement with the bank and according to his instructions. The best that can be said for defendant is that plaintiff's agency in the matter was equivocal. If so, the verdict must stand.

A good explanation of the rule is found in Holmes v. Durell, 51 Me. 201, 203, where the court said:

"The ground on which effect is given to a partial payment and indorsement, is, that it is a distinct admission that, at the time of payment, the debt is still unpaid and subsisting. There are two parties interested in this admission and payment. The debtor is interested to have the debt diminished and in having the indorsement on the note as evidence of the fact. The creditor, who has a right to regard all the signers as equally bound to him, whether sureties or principals, is interested, not merely in the sum paid, but also in the fact that, by such payment, the party making it admits a subsisting debt at the time, which admission, as to him, will be binding for six years from its date. If, at the time of payment, the party discloses that he is paying the money of the principal, received from him for that purpose as his agent, and that it must be so regarded, then, of course, the principal only would be bound."

Here the jury could find, as it did, that plaintiff disclosed to the bank that the payment was that of Ben, the principal debtor. If

so, the determination that he acted as a messenger for Ben is justified.

Affirmed.