**RTC COMMERCIAL LOAN TRUST, Plaintiff,**

v.

**Richard I. TEMPLETON, et al., Defendants.**

No. 2:96–CV–64.

United States District Court, W.D. Michigan, Southern Division.

Aug. 15, 1997.

---

5. Other arguments advanced by plaintiff in his appeal will not be addressed.

Larry E. Powe, Freeman McKenzie, PC, Mt. Clemens, MI, for RTC Commercial Loan Trust.

Steven J. Cannello, Moher & Cannello, PC, Sault St. Marie, MI, for Richard & Nichola Templeton, Templeton Family Trust, & Soo Bottling Company, Inc.

Stanley J. Stek, Miller Canfield Paddock & Stone, PLC, Grand Rapids, MI, for Coca–Cola Company & Coca–Cola Financial Corporation.

Michael J. Sullivan, Clark Klein & Beaumont, Detroit, MI, for Perrine Enterprises.

Dane A. Lupo, Lupo & Koczkur, PC, Detroit, MI, for Eagle Snacks, Inc.

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

McKEAGUE, District Judge.

Now before the Court are plaintiff's motions for partial summary judgment (dockets # 23, 61), defendants' motion for summary judgment (docket # 31) and plaintiff's motion for a preliminary injunction (docket # 62). Hearings were held on these motions on April 28 and May 20, 1997 and the matters were taken under advisement, pending supplemental briefing ordered by the Court. Having reviewed the parties' supplemental briefs and carefully considered the issues before it, the Court now issues the following opinion.

### I. Procedural History

On June 24, 1996, plaintiff moved for partial summary judgment with respect to Counts I, VI and VII of its complaint. Shortly before a hearing on that motion, this case was stayed when defendant Richard I. Templeton filed for bankruptcy. After Mr. Templeton's bankruptcy case was dismissed, this case was re-opened by a February 14, 1997 order of this Court. On March 21, 1997, plaintiff filed a supplemental motion for partial summary dropping Count VII from the motion. Therefore, the Court now considers plaintiff's motion for partial summary judgment with respect to Count I (breach of contract) and VI (foreclosure on stock of the Soo Bottling Company). In their initial response to plaintiff's motion, defendants admitted liability on the subject loan, but contended plaintiff's action was barred by lack of subject matter jurisdiction and the statute of limitations. Defendants also filed a motion for summary judgment on August 5, 1996 (docket # 31) on the grounds that the Court lacked subject matter jurisdiction.

### II. Subject Matter Jurisdiction

As originally pled, plaintiff's complaint asserted that the Court had diversity jurisdiction over this action because plaintiff was incorporated in Delaware and defendants were citizens of Michigan and various states other than Delaware. Defendants responded by challenging diversity jurisdiction on the grounds that since two of the defendants, Coca–Cola Company, and Coca–Cola Financial Company, were incorporated in Delaware, as was plaintiff, plaintiff did not have the complete diversity as required under 28 U.S.C. § 1332. Plaintiff's inconsistent re-

sponse to this defense has changed several times over the past year and is at least partly responsible for the delays in this motion being properly considered. Initially, plaintiff responded by suggesting that it planned to cure this jurisdictional defect and achieve complete diversity by agreeing to voluntarily dismiss the two non-diverse, Coca–Cola defendants. But prior to taking that action, plaintiff changed course and asserted that it did not need to dismiss the two defendants because, it argued, this Court also had federal question jurisdiction. After defendants pointed out conclusively that the Court lacked federal question jurisdiction and that the case plaintiff relied on in support of this proposition was no longer good law, plaintiff again changed its tune and re-asserted its plan to dismiss the non-diverse defendants so it could properly plead total diversity and this Court would thus have federal subject matter jurisdiction over the remaining defendants. After months of indecision on this issue, plaintiff finally moved on May 20, 1997 to dismiss all of its claims against the two Coca–Cola defendants and drop Count II of its complaint. The Court granted that motion at its May 20, 1997 hearing.

■ The Sixth Circuit has held that diversity jurisdiction may be created, retroactively, by the dismissal of non-diverse parties. *Grant County Deposit Bank v. McCampbell,* 194 F.2d 469, 472 (6th Cir.1952). "It appears well settled that if jurisdiction based on diversity of citizenship is defeated by the existence of parties who are not indispensable in an action, jurisdiction, although not existing at the time of filing, can be acquired by dismissing the action as to such parties." *Id.* Accordingly, this Court concludes that by dismissing the non-diverse defendants plaintiff has properly created complete diversity between itself and the remaining defendants and therefore this Court has subject matter jurisdiction under 28 U.S.C. § 1331. Therefore, defendants motion for summary judgment based on lack of diversity jurisdiction, (docket # 31), is hereby denied.

### III. Statute of Limitations

Defendants also contend this action is barred by the statute of limitations.

### a. Factual background

In its original 14–count complaint, filed in this Court on March 21, 1996, plaintiff alleged that Richard I. Templeton, one of 15 named defendants, had defaulted on a $2.3 million loan made by plaintiff's assignor, the Midwest Savings Association ("Midwest"). In addition to its breach of contract action against Templeton and the Soo Bottling Company ("Bottling Company,"), a Templeton-owned company that guaranteed the loan by Midwest, plaintiff brought a series of other claims aimed at foreclosing on and quieting title to a number of other assets that Templeton and the Bottling Company had pledged as collateral for the loan. Most of the remaining defendants were named because they potentially have security interests in property plaintiff seeks to foreclose on.

■ The parties agree that the loan documents are to be interpreted under Minnesota law. Pursuant to Minnesota law, a claim upon a contract or other obligation must be commenced within six years. Minn.Stat.Ann. § 541.05(1). The note held by plaintiff was made by Richard Templeton on December 6, 1985 and originally due on December 12, 1986. The due date of the note was extended on December 12, 1986 and on November 8, 1988, Midwest demanded full payment of the note from Richard Templeton. The Templeton defendants concede in their May 15, 1997 brief to this Court, that November 8, 1988 was the date upon which Minnesota's six-year Statute of Limitations, § 541.05(1), began to run. Without any suspensions or renewal, the Minnesota statute of limitations would have expired on November 8, 1994. This litigation was filed 16 months later, on March 21, 1996. Unless plaintiff can identify an exception to the statute of limitations, plaintiff's cause of action would be time barred.

### b. Applicable Law and Analysis

Plaintiff originally contended that under 11 U.S.C. § 108(c), the statute of limitations would be tolled during the roughly four-year time period during which Richard I. Temple-

ton was in bankruptcy.[1] However, after defendants cited *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir.1993), for the proposition that § 108(c) only tolls the statute of limitations until 30 days after a bankruptcy stay is lifted, plaintiff conceded in its June 9, 1997 supplemental brief to the Court, that "the suspension language in section 108(c)(1) is not intended by Congress to extend the time period under the applicable statute of limitations" and that this section of the Code would not, by itself, bar defendants statute of limitations defense. Plaintiff's Response Brief Regarding Statute of Limitations, p. 2.

Despite this concession, plaintiff contends it can still overcome the statute of limitations by producing evidence that actions taken by Templeton effectively renewed the statute of limitations. Specifically, plaintiff relies on two different theories as to why the statute of limitations was renewed. First, plaintiff contends that six partial payments made by defendants in 1992, renewed the statute of limitations. Second, plaintiff contends that Templeton reaffirmed the debt in 1992. The Court finds it unnecessary to consider plaintiff's latter and weaker theory, because it is convinced from reviewing the evidence that defendants' partial payments on the debt were sufficient as a matter of law to renew the statute of limitations in 1992.

### c. 1992 Partial Payments

■ Under Minnesota law, making partial payments on a debt will renew the statute of limitations. *Erickson v. Husemoller*, 191 Minn. 177, 183, 253 N.W. 361 (1934). "In order to prevent the running of the statute a payment must have been made by the debtor in person, or for him by his authority, or for him and in his name without his authority and subsequently ratified by him." *Id.See also Ross v. Simser*, 193 Minn. 407, 258 N.W. 582 (1935) ("It is enough that [debtor] per-

sonally made or participated in making the payment. That, as a matter of law, suspended as to her the running of the statute of limitations under the rule of *Erickson v. Husemoller*."); *Kehrer v. Weismueller*, 182 Minn. 474, 234 N.W. 690 (1931) (defendant cannot attempt to repudiate payments made on the debt through a technicality to avoid renewing the statute of limitations).

Plaintiff has presented evidence in the form of a "Borrower History Report" dated May 3, 1995, (listed as Exhibit A to plaintiffs's May 15, 1997 brief), identifying six payments that were applied to both interest and principal owed by Richard Templeton in 1992. The payments,[2] ranging from $11,500 to $12,500 were made between April 23, 1992 and October 13, 1992. Defendants do not dispute the accuracy of this report, they simply claim they do not recall making the payments and argue plaintiff does not have conclusive proof that Templeton made the payments himself. Defendants arguments fall short of creating a genuine issue of material fact on this question for the following reasons.

In August 1991, Richard Templeton and his sons Dean and Blake Templeton, opened up share and draft accounts for a company called Tempco Management at the Joint Military Services Credit Union. In doing so, Richard Templeton executed two resolutions indicating he was a partner in Tempco Management. Plaintiff has provided copies of five checks drawn on this credit union account, made payable to Midwest Savings Association, plaintiff's assignor, which among other things, included the following significant remarks: (1) check number 535 references the number "90–6991–9P1," the case number of Richard Templeton's pending bankruptcy action in the Middle District of Florida, (2) check number 601 refers to a "Templeton Pmt." The credit union state-

---

**1.** Richard Templeton filed his petition under Chapter 11 of the United States Bankruptcy Code on July 17, 1990, thereby initiating a bankruptcy case pending in the United States Bankruptcy Court for the Middle District of Florida, Ft. Myers Division. *See In re Richard I. Templeton*, Case No. 90–6991–9P1. The case was dismissed on either April 5, 1994 (when the Notice of Dismissal was filed) or January 12, 1995 (when

the Final Decree and Closing Report was filed), depending on which event is relied upon.

**2.** Payments are listed as follows: $12,458.33 on April 23, 1992; $12,500 on July 20, 1992; $12,-458.33 on August 5, 1992; $12,458.33 on August 5, 1992; $11,500 on August 13, 1992; and $11,500 on October 13, 1992.

ments for that account for the months in question were mailed to P.O. Box 731, Traverse City, Michigan, the address for Soo Bottling, a company wholly owned by Richard Templeton. In a July 21, 1992 deposition, while he was still in bankruptcy, Richard Templeton told counsel for RTC that while he had no ownership interest in Tempco, he did have check signing authority. During this deposition, Richard Templeton admitted that one of the five checks appeared to contain his signature and that they were made by Tempco in the form of loans from his son to him.

Perhaps even more significant than all of this tangible physical proof is consideration of the temporal context of when these payments were made. During this period, Richard Templeton faced a Hobson's choice of either having to make partial payments to Midwest, a secured creditor, or risk the bankruptcy court lifting the stay so that Midwest could sidestep the bankruptcy proceedings and bring a lawsuit directly against Richard Templeton.

Defendants raise a number of arguments opposing plaintiff's partial payments theory. First, Richard Templeton disputes in affidavits ever procuring or ratifying the payments made by Tempco Management. Second, defendants point out that three of the five checks, numbers 570, 574 and 601, cannot be considered as partial payments because they were returned for nonsufficient funds. This argument is unavailing because it leaves three partial payments in tact and merely reflects poorly on either the continued mismanagement of defendants' finances or their lack of good faith in sending a check that was not covered by sufficient funds. Defendants further argue that because the payments were made by a company owned by Dean Templeton, in compliance with an order of the bankruptcy court, they were involuntary, made by a third party and therefore do not constitute a voluntary acknowledgment of the debt by Richard Templeton himself. Defendants cite *Troup v. Rozman*, 286 Minn. 88, 174 N.W.2d 694, (1970) for the proposition that plaintiff must show the payment was "a voluntary payment of a subsisting debt" and not made under compulsion.[3] As has already been explained, just because Richard Templeton faced a choice of two evils, he cannot argue that his decision to choose one evil over the other, was not a voluntary choice.

■ Finally, defendants argue that even if the Court finds that partial payments by Richard Templeton renewed the statute of limitations as to his personal liability on the loan, such payments did not renew the statute of limitations with respect to Soo Bottling Company, the loan's guarantor. Defendants erroneously cite *Federal Deposit Ins. Corp. v. Galloway*, 613 F.Supp. 1392 (D.Kan.1985), in support of their argument. However, that case was reversed by the Tenth Circuit, and not "on other grounds" as defendant contends. *See Federal Deposit Ins. Corp. v. Galloway*, 856 F.2d 112 (10th Cir.1988). In addition, defendants fail to adequately distinguish the contrary and binding authority of the Sixth Circuit in *Federal Deposit Ins. Corp. v. Associated Nursery Systems, Inc.*, 948 F.2d 233 (6th Cir.1991). Defendants argue that *Associated Nursery* "should not be followed by this Court because it fails to follow over 100 years of established precedents," without explaining how a district court sitting in the Sixth Circuit can simply ignore such precedent because it finds it to be the minority view. Furthermore, in analyzing *Associated Nursery* and comparing the guaranty agreement at issue in that case

---

3. Citing *United States v. Lorince*, 773 F.Supp. 1082 (N.D.Ill.1991), defendants also argue that not every partial payment is sufficient to renew the statute of limitations, only those that are made as "part payment of an admitted debt, made and accepted in circumstances where an unequivocal promise may be inferred to pay the remainder of the debt. Thus, it is the intent of the debtor when he made the payment, not the intention of the creditor when he received the payment, that is the crucial inquiry here." *Id.* at 1087. *Lorince* is not persuasive. First, it involved a federal district court's interpretation of 28 U.S.C.A. § 2415(a), not the interpretation of Minnesota law. Second, the plaintiff in *Lorince* attempted to argue that the auction proceeds from sale of collateral securing the loan constituted a "partial payment" of a debt owed the United States, a far stretch from the situation here where Richard Templeton apparently made the payments to prevent the bankruptcy court from lifting the stay that blocked Midwest from suing Templeton on the loan.

with the instant case, (See Exhibit C to Plaintiff's Complaint), this Court finds the guaranty signed by Soo Bottling Company contains nearly the identical language that the Sixth Circuit held to be a "continuing guaranty" in *Associated Nursery*.[4] *Associated Nursery*, 948 F.2d at 237–239. In that case, the Sixth Circuit declined to follow the general rule that, "partial payments of a note by a principal debtor do not toll the statute [of limitations] as to the note's guarantors," because it held that upon close review of the guaranty at issue, "The Court finds that by the express terms of this guaranty agreement, partial payment on the loan restarted the statute of limitations running against both the principal debtor and Guinn, the guarantor." *Id.* at 237, 239. This Court holds that *Associated Nursery* is on point and that because of the express language in the Soo Bottling Company guaranty, *See* n. 4, *supra*, the statute of limitations was also renewed as to Soo Bottling Company, when Templeton caused the partial payments to be made in 1992.

 For the five reasons outlined below, this Court holds that plaintiff has presented clear and convincing evidence that the payments in 1992 constituted partial payments on Richard Templeton's debt and therefore renewed the statute of limitations in 1992. As such, the statute of limitations does not expire until 1998 and this action on the plaintiff's note is not time barred. First, the partial payments were made by Tempco, a company controlled by Richard Templeton's sons. Second, Richard Templeton's name was on Tempco's signature cards at the credit union and shared the same post office box with Soo Bottling Company. Third, Richard Templeton acknowledged writing checks from Tempco's accounts in the past. Fourth and perhaps most persuasively, the checks had the bankruptcy court's file number on them and other significant identifying remarks. Fifth, the checks were written during a time when Richard Templeton was in the no-win situation of either having to make partial payments to a secured creditor or risk the lifting of the bankruptcy stay which held Midwest at bay.

Accordingly, this court finds as a matter of law that Richard Templeton's partial payments on the debt in 1992 renewed the statute of limitations. In as much as defendants, in their response to plaintiff's original motion for partial summary judgment, acknowledged the debt Richard and Nichola Templeton owed plaintiff, and relied solely on the defenses of lack of jurisdiction and the statute of limitations, the Court finds there is no genuine issue of material fact with respect to any issues in plaintiff's motion for partial summary judgment, and it is therefore granted.

---

4. The Soo Bottling Company guaranty contains the following language: "This guaranty is an absolute and completed one and shall be a *continuing* one and no notice of any indebtedness already or hereafter contracted or acquired by the Creditor, or of any renewal, compromise or extension thereof . . . need be given to the undersigned, who hereby consents to each of such acts." (emphasis added).