**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Appellee,**

v.

**ASSOCIATED NURSERY SYSTEMS, INC., Defendant,**

**S. Frank Guinn, Jr., Defendant–Appellant.**

No. 90–6270.

United States Court of Appeals, Sixth Circuit.

Argued July 18, 1991.

Decided Oct. 30, 1991.

M. Edward Owens, Jr., Lewis, King, Krieg & Waldrop, Knoxville, Tenn., Jaclyn C. Taner (argued), Michelle Kosse (briefed), Federal Deposit Ins. Corp., Washington, D.C., for plaintiff-appellee.

Edward L. Summers (argued and briefed), Haynes, Meek & Summers, Knoxville, Tenn., for defendant and defendant-appellant.

Before RYAN and BOGGS, Circuit Judges, and DOWD, District Judge.*

DOWD, District Judge.

## I. INTRODUCTION.

This case is before the Court on appeal from the district court's grant of summary judgment in favor of plaintiff-appellee, the Federal Deposit Insurance Corporation ("FDIC"). The FDIC brought suit against defendant-appellant S. Frank Guinn, Jr. ("Guinn") and Associated Nursery Systems, Inc. ("Associated Nursery") on May 26, 1989 to collect amounts due on a $1.5 million promissory note. Associated Nursery was the principal debtor on the promissory note, and Guinn was a guarantor of Associated Nursery's debt.

On August 8, 1990, the district court granted the FDIC's motion for summary judgment and found Associated Nursery and Guinn liable for payment of the full amount due on the Associated Nursery debt. The district court found that as of May 26, 1989, defendants Associated Nursery and Guinn were liable to the FDIC for $2,360,706.53 and that interest had been accruing on the indebtedness at a rate of $575.13 *per diem*. Guinn now appeals the district court's grant of summary judgment in favor of the FDIC.

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Two issues are present for our review. First, the Court must determine whether a partial payment made on the Associated Nursery promissory note "restarted"[1] the running of the statute of limitations applicable to the FDIC's cause of action, 28 U.S.C. § 2415(a), against Guinn, the guarantor of Associated Nursery's debt. Second, even if the Court determines that the partial payment restarted the running of the statute of limitations against Guinn, the Court must determine whether the release of the collateral securing the Associated Nursery note by the FDIC discharged Guinn from liability as guarantor of the Associated Nursery note.

For the reasons set forth below, the Court finds that the partial payment on the Associated Nursery debt restarted the running of the statute of limitations against defendant Guinn, the guarantor of the Associated Nursery debt. The Court additionally finds that the release of the collateral did not discharge Guinn from liability because the guaranty agreement signed by Guinn provides that the creditor can release collateral without giving notice or securing the consent of the guarantor.

The Court finds that the district court properly granted summary judgment in favor of the FDIC. Accordingly, the Court affirms the judgment of the district court.

## II. FACTS.

In the Fall of 1981, Milton A. Turner ("Turner") invited defendant Guinn and Ernest Lisson to become shareholders with him in Associated Nursery. Each of the three men eventually took a one-third interest in Associated Nursery. Guinn agreed to serve as president of the Corporation.

Turner secured a $1.5 million loan from United American Bank—Knoxville ("UAB") in the Fall of 1982 for Associated Nursery. On October 29, 1982, the loan was closed. Guinn executed the promissory note on behalf of Associated Nursery as its President and also executed a deed of trust and security agreement granting UAB a mortgage against Associated Nursery's real estate and a security interest in its inventory and other personal property. A guaranty agreement was also signed by Guinn.[2]

The terms of the promissory note provided for payment in thirty-six (36) monthly installments commencing on November 1, 1982. On February 14, 1983, UAB declared insolvency and was closed. Payments on Associated Nursery's loan were in arrears at the time of UAB's closing.

The FDIC was appointed receiver for UAB on February 14, 1983. On the same day, the FDIC entered into a purchase and assumption agreement with First Tennessee Bank ("FTB") and transferred the Associated Nursery note to FTB. On August 8, 1984, the FDIC repurchased some of the assets of FTB including the Associated Nursery note.

The loan payment history on the Associated Nursery note indicates that a payment of $450,000.00 was made on March 29,

1. By use of the term "restarted," the Court means that the statute of limitations had already been running on the cause of action to collect the amounts due on the Associated Nursery debt, but that it began to run anew from the date of the partial payment on the debt. That is, a new limitations period was commenced by the partial payment.

2. The circumstances surrounding the execution of the guaranty agreement at issue are somewhat vague. Defendant Guinn stated in deposition testimony that he did not sign a guaranty with the name Associated Nursery on it. Defendant Guinn seemed to indicate, however, that he signed a blank document and somebody filled in the other parts of the guaranty later. Guinn stated that through prior dealings with the Bank he had signed a continuing personal guaranty for the indebtedness of a corporation called Little Green Garden, Inc., but that he had not signed a guaranty specifically for Associated Nursery.

In the face of a motion for summary judgment, the nonmoving party has the burden of coming forward with specific facts demonstrating that there are present genuine issues of material fact which preclude the granting of judgment as a matter of law. Fed.R.Civ.P. 56(e). Although Guinn seems to allege that he was the subject of some sort of fraud on the part of bank officials, he failed to come forward with specific facts in support of such an allegation. Accordingly, any fraud claim was lost by Guinn when he failed to properly support the claim when faced with the FDIC's motion for summary judgment.

1988. The $450,000.00 payment was negotiated with the FDIC by Turner, the treasurer of Associated Nursery. In exchange for the $450,000.00 payment, the FDIC released its liens on the collateral securing the Associated Nursery note.[3]

On May 26, 1989, the FDIC brought suit against Guinn and Associated Nursery to recover amounts due on the $1.5 million Associated Nursery loan.

Guinn filed a motion for summary judgment on June 21, 1990; the FDIC filed a cross-motion for summary judgment on July 3, 1990. The district court, basing its decision upon the language in the continuing guaranty agreement signed by Guinn, found that when the $450,000.00 partial payment on the Associated Nursery note was made the statute of limitations contained in 28 U.S.C. § 2415(a) began running anew against both Associated Nursery as the principal debtor and against Guinn as the guarantor. Accordingly, the district court granted the FDIC's motion for summary judgment on August 8, 1990, and granted judgment against both defendants in the amount of $2,360,706.53 plus $575.13 per day in pre-judgment interest. Guinn filed a motion for a new trial or to alter or amend on August 20, 1990. The district court denied the motion on September 10, 1990, and Guinn filed a notice of appeal on September 25, 1990.

## III. LAW AND DISCUSSION.

### A. *Applicable Law.*

As a preliminary matter, the Court must determine what law applies in this case. In *D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court indicated that when a suit is brought by the FDIC, a federal corporation, the lawsuit involves a question of federal law. *Id.* at 456, 62 S.Ct. at 679. This Court explained in *Federal Deposit Ins. Corp. v.*

*Turner*, 869 F.2d 270 (6th Cir.1989), that "[a]s a general rule, both federal and state law apply where the FDIC acquires a bank's assets in a purchase and assumption transaction." *Id.* at 273 (citation omitted). If, however, state law contradicts federal law, "the federal law dominates." *Id.* (citations omitted); *Federal Deposit Ins. Corp. v. Wood*, 758 F.2d 156, 159 (6th Cir. 1985), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985) (court stating that "[w]hen the FDIC purchases notes in a purchase and assumption transaction, it acts in its corporate capacity ... [and] [i]t follows that federal law applies").

Sixth Circuit precedent does not exist on the particular issues presented on appeal in this case. Accordingly, the Court will apply general principles of common law, state law to the extent it is consistent with general principles of federal common law, and will consider pertinent case law from other circuits to resolve the present appeal.

### B. *Statute of Limitations.*

The Court now turns to an examination of the statute of limitations issue. In this regard, the Court must determine whether a partial payment on the Associated Nursery debt, of which Guinn had no knowledge and which Guinn did not ratify, restarted the running of the statute of limitations against Guinn as guarantor of the Associated Nursery debt. Both parties agree that the statute of limitations applicable to the present action is 28 U.S.C. § 2415(a) which provides as follows:

Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed with-

---

**3.** The FDIC also contends that a payment of $15,452.86 was made on the loan on March 31, 1984; however, Guinn contends that FDIC did not provide evidence to substantiate the March 31, 1984 payment.

The existence of a fact dispute with respect to whether the March 31, 1984 payment was made

does not render the granting of summary judgment in this case improper because, as is illustrated below, the $450,000.00 payment, about which a fact dispute does not exist, restarted the running of the statute of limitations.

in six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: Provided, That in the event of later partial payment or written acknowledgement of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgement ...

28 U.S.C. § 2415(a) (1988). In addition, both parties agree for purposes of appeal that the statute of limitations initially began to run when the FDIC took over the failed bank as receiver on February 14, 1983.[4] The issue the parties do not agree on is whether partial payment of the debt restarted the running of the six-year statute of limitations against Guinn, the guarantor.

The FDIC argues that, while the general rule is that partial payment only restarts the running of the statute of limitations against the principal debtor, an exception exists in situations such as the present in which the guarantor signs a broad, continuing guaranty. The FDIC argues that under the specific language of the guaranty agreement signed by Guinn, partial payment restarts the running of the statute of limitations against both the principal debtor and the guarantor.

Guinn argues, on the other hand, that partial payment does not restart the running of the statute of limitations against him as guarantor of the Associated Nursery note and urges that this Court follow the holdings in *Federal Deposit Ins. Corp. v. Galloway*, 856 F.2d 112 (10th Cir.1988) and *Federal Deposit Ins. Corp. v. Petersen*, 770 F.2d 141 (10th Cir.1985), two cases in which the Tenth Circuit found that partial payment and acknowledgment, respectively, did not restart the running of the statute of limitations contained in 28 U.S.C.

§ 2415(a) against guarantors of the subject debts.

A determination of whether partial payment restarted the running of the statute of limitations against defendant Guinn requires this Court to examine the guaranty contract at issue since "[t]he liability of a guarantor depends primarily on the construction and application of the guaranty contract." 38 Am.Jur.2d *Guaranty* § 73 (1968). The guaranty contract "defines the obligations and rights of both the guarantor and the creditor." *Id.* And, " 'if the language of the ... [guaranty contract] is clear and unambiguous, the court must interpret it as written ...' " *Third Nat'l Bank in Nashville v. Friend*, 626 S.W.2d 464, 466 (Tenn.App.1981) (citations omitted).

28 U.S.C. § 2415(a) expressly provides that a partial payment will restart the running of the statute of limitations against the principal debtor. The legislative history to Section 2415(a) reveals that the provision regarding later partial payment "embodies a familiar principle in law which is embodied in the law of many States. The obligation of a debt will continue where a debtor has acknowledged the debt and indicated his willingness to discharge the obligation." S.Rep. No. 1328, 89th Cong., 2d Sess. 3 (1966), *reprinted in* 1966 U.S.Code Cong. & Admin.News 2502, 2504. Section 2415(a) makes no reference to the effect of partial payment by a principal debtor on a cause of action against the guarantor of a debt.

 The general rule is that "partial payments of a note by a principal debtor do not toll the statute [of limitations] as to the note's guarantors." *United States v. Rollinson*, 866 F.2d 1463, 1468 (D.C.Cir.1989), *cert. denied*, 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989), (citing 38 Am.Jur.2d *Guaranty* § 121 (1968) and Annotation, *Acknowledgment, new promise, or payment by principal as tolling Statute of*

---

**4.** The FDIC asserts an alternative argument on appeal that even if this Court were to find that the partial payment did not restart the running of the statute of limitations against Guinn, the Court should find that a new cause of action accrues each time an installment payment is

due and that therefore the statute of limitations has not run on any installment payments due after May 26, 1983. The Court need not address this additional argument, however, because it finds that partial payment restarted the running of the statute of limitations against Guinn.

*Limitations as against guarantor,* 84 A.L.R. 729 (1933)). The rationale behind the general rule is that "[a] guarantor's consent to the debtor's future conduct may not be presumed merely on the basis of the original guarantee." *Id.* at 1469.

The general rule that partial payment does not restart the running of the statute of limitations against the guarantor of a debt is, however, subject to alteration by agreement of the parties. *Id.; Union Planters Nat'l Bank of Memphis v. Markowitz,* 468 F.Supp. 529, 532 (W.D.Tenn. 1979) (court finding that statute of limitations was inapplicable to the guaranty agreement at issue since the agreement was, "[b]y its terms, . . . 'continuing, absolute and unconditional' until terminated in writing by the guarantors and until all prior debts were fully paid").

■ The Court turns now to an examination of the language found in the guaranty agreement signed by Guinn to determine whether the parties, by agreement, altered the general rule regarding partial payments. The Court notes first that the guaranty agreement is titled a "CONTINUING GUARANTY."[5] The guaranty agreement provides that Guinn gives the continuing guaranty to the UAB for

> the payment in full, together with all interest, fees and other charges of whatsoever nature, of any indebtedness, direct or indirect, absolute or contingent, now existing or hereafter contracted and howsoever evidenced, of Debtor to Bank, up to the total amount of $——— Dollars, or if no amount is herein set forth, then this Guaranty shall be unlimited.

The continuing guaranty agreement further provides that:

> Bank may, in its sole and absolute discretion, grant renewals or extensions of payment, take and give up security, accept compositions, grant releases and discharges to the principal Debtor, any surety, guarantor, endorser or other par-

ty primarily or secondarily liable thereon, including any one or more of the undersigned, make changes of any sort whatsoever in the terms of its contract or manner of doing business with Debtor and/or with the other parties and securities in relation thereto, and without any notice to or consent from me (us), may also apply all monies received from Debtor and/or from others, or from securities, as Bank may think best, without in any way altering, affecting, limiting or lessening the liability of the undersigned, or if more than one, any of the undersigned, pursuant to this Continuing Guaranty.

> . . . .

> It is further hereby expressly agreed that this Continuing Guaranty is absolute and complete, and that acceptance and notice of acceptance hereof by Bank are therefore unnecessary, and they are hereby expressly waived, it being the intent of the parties hereto that this Guaranty shall continue in full force and effect until written notice of its discontinuance shall be served upon one or more of the executive officers of Bank, but such discontinuance shall not affect my (our) liability as to any indebtedness or obligation of Debtor then existing, nor the liability of any other party liable in the premises.

The guaranty agreement signed by Guinn is a broadly worded document whereby Guinn agreed to guarantee an unlimited amount of debt of Associated Nursery with the UAB. By its express terms, the guaranty agreement covers not only the $1.5 million loan which is the subject of the present suit but also governs "any indebtedness" of Associated Nursery "now existing or hereafter contracted and howsoever evidenced." Further, the guaranty agreement provides that it will continue in full force unless and until Guinn notifies the Bank in writing of its discontinuance. It is hard to imagine a more broadly word-

---

5. A continuing guaranty is "one which is not limited to a particular transaction or specific transactions, but which is intended to cover future transactions until revoked." *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn.1975) (citing *Stearns v. Jones,* 138 Tenn. 589, 199 S.W. 400 (1917)); *See also, Third Nat'l Bank in Nashville v. Friend,* 626 S.W.2d 464, 467 (Tenn.App.1981) (citations omitted).

ed guaranty agreement. The Court finds that by the express terms of this guaranty agreement, partial payment on the loan restarted the statute of limitations running against both the principal debtor and Guinn, the guarantor.

In arriving at its conclusion, the Court declines to follow the holdings of the two Tenth Circuit cases referenced above with respect to the effect of partial payment or acknowledgement as urged by Guinn. In *Federal Deposit Ins. Corp. v. Petersen,* 770 F.2d 141 (10th Cir.1985), the United States brought suit against several defendants to enforce guaranty agreements signed by the defendants. The three defendants in the case signed a guaranty of the debt of a corporation. The debtor defaulted on the loan. The FDIC filed suit six years and three months after the note matured to enforce the guaranties. The FDIC argued that a letter written by the corporation's accountant acknowledging the debt had started the obligation of the guarantors anew. The Tenth Circuit found, however, that "[i]t is the general rule that an acknowledgment by a principal debtor will not affect the running of the statute of limitations as to a guarantor ... [and] [w]e believe that the federal courts will follow this rule." *Petersen,* 770 F.2d at 143. The Court in *Petersen* further commented that:

> [a]cknowledgment or part payment of the debt does not constitute a new agreement. It only suspends the running of the statute of limitations against the party making such acknowledgment or partial payment.

*Id.*

The *Petersen* Court labeled as "sophistry" an argument by the FDIC that "the guaranties permitted the extension or renewal of the note and ... [the principal debtor's] acknowledgment of the debt constituted such a renewal to which the guarantors gave prior consent by signing the guaranties." *Id.* The Tenth Circuit expressed the view that the acknowledgment of the debt did not constitute an extension or renewal which were both permitted under the terms of the guaranties. The

Court stated in this regard that an "[e]xtension or renewal of a note refers to a binding agreement supported by consideration to postpone the maturity date of a note and replace it with a new contract." *Id.* at 143. In *Galloway, supra,* the Tenth Circuit adhered to its decision in *Petersen* and found that partial payments on notes did not create new and separate debts so as to suspend the running of the statute of limitations contained in 28 U.S.C. § 2415(a). The Tenth Circuit commented that "[a]dopting ... [such a] position would deprive guarantors of meaningful protection from statutes of limitations." *Galloway,* 856 F.2d at 117.

This Court finds persuasive in arriving at its decision a dissent authored by Circuit Judge Timbers in *Federal Deposit Ins. Corp. v. Petersen,* 770 F.2d 141 (10th Cir. 1985). In his dissent in *Petersen,* Judge Timbers expressed the view that the statute of limitations in 28 U.S.C. § 2415(a) began to run anew against both a principal debtor and a continuing guarantor when an acknowledgment of the debt was sent to the creditor by the accountant of the principal debtor. Judge Timbers examined the language of the continuing guaranty at issue which provided that the guarantor undertook to pay all obligations of the debtor to the creditor howsoever created whether existing now or in the future. Judge Timbers stated:

> As the district court correctly held, the acknowledgment did *not* represent an 'extension or renewal of the loan', as also provided for by the guarantee agreement. The acknowledgment, however, did constitute the undertaking of a *new* obligation to pay, one clearly encompassed by the broad language of the guarantee agreement.

*Id.* (Timbers, J., dissenting). Judge Timbers reasoned that a new promise to pay came into existence upon the acknowledgment of the debt; because the guarantor agreed to be responsible for future indebtedness, the guarantor could be held liable for the new debt thus created.

The same language as was present in the guaranty agreement which was the subject

of the *Petersen* decision is present in the guaranty agreement which is the subject of the present case. Guinn signed a continuing guaranty agreement which provides that he guarantees payment in full of any indebtedness of Associated Nursery now existing or hereafter contracted in an unlimited amount. When the partial payment was made on the Associated Nursery debt, the cause of action for repayment of the loan was started anew. The law implies a new promise to pay in the case of later partial payment of a debt. *Rollinson,* 866 F.2d at 1468. By the express terms of the continuing guaranty agreement, Guinn agreed to guarantee all future indebtedness of Associated Nursery unless he were to give notice to the Bank of the discontinuance of the guaranty. Guinn gave no such notice. The Court finds, accordingly, that the statute of limitations found in 28 U.S.C. § 2415(a) does not bar the FDIC's claim against Guinn to collect amounts due on the Associated Nursery note.

### C. *Release of Collateral.*

■ The Court next must resolve the issue of whether Guinn's liability as a guarantor of the Associated Nursery debt was discharged when the FDIC released the collateral securing the debt without the consent of or prior notice to Guinn. Generally, a guarantor of a debt is discharged if the creditor releases the collateral securing the debt. 38 Am.Jur.2d *Guaranty* § 84 (1968); *See also, Union Planters Nat'l Bank of Memphis v. Markowitz,* 468 F.Supp. 529, 533 (W.D.Tenn.1979) (court stating that the general rule is that the guarantor is discharged to the extent of any loss caused by the failure of the creditor to perfect a security interest in collateral). The rationale behind this general rule is that "[t]he creditor, having thus had security for payment of the debt, is deemed to have stood toward the guarantor in the position of trustee and, because he has breached that trust duty, may not hold the guarantor liable." 38 Am.Jur.2d *Guaranty* § 84 (1968). In addition, "the guarantor, if the security had not been lost, would

have been subrogated to the creditor's right to resort thereto; and hence, having been deprived of this right by the creditor's act, the guarantor is not liable on the contract of guaranty." *Id.*

■ An exception to this general rule of discharge is that the guarantor is not discharged if he or she has consented to the release of the collateral. *Id.* The parties to the present case concede the fact that Guinn was not notified prior to the sale of the assets of Associated Nursery nor did Guinn give his express consent to the particular transaction. The FDIC argues, however, that by signing the guaranty agreement which he signed, Guinn consented in advance to the release of the security for the Associated Nursery debt and that, accordingly, Guinn was not discharged from liability by the release of the collateral. As was indicated above in the Court's opinion, the terms of the guaranty agreement control the guarantor's obligations. Accordingly, the Court turns to the continuing guaranty agreement to determine whether in fact consent was given to the release of the collateral.

The continuing guaranty agreement provides that the "Bank may, in its sole and absolute discretion, ... take and give up security ... [and] make any changes of any sort whatsoever in the terms of its contract or manner of doing business with Debtor and/or the other parties and securities in relation thereto, and without any notice to or consent from me (us), may also apply any monies received from Debtor and/or others, or from securities, as Bank may think best, without in any way altering, affecting, limiting or lessening the liability of the undersigned ... pursuant to this Continuing Guaranty." The language of the guaranty is unambiguous. By its express terms, Guinn, as guarantor, gave his consent to the FDIC's giving up of the collateral securing the Associated Nursery note. Because Guinn gave prior consent to the release of the collateral, Guinn was not discharged from liability as guarantor when the assets of Associated Nursery were sold.[6]

---

**6.** Because the Court has found that Guinn gave

consent to the release of the collateral through

Guinn makes the additional argument that he is discharged from liability because the FDIC failed to follow its own internal guidelines when it released the collateral without giving Guinn notice or obtaining Guinn's consent. Guinn argues that a federal agency is bound by its own regulations. Guinn states that a failure to comply with regulations is a fatal flaw to administrative action. Guinn relies in part upon the case of *Kelly v. Railroad Retirement Bd.*, 625 F.2d 486 (3d Cir.1980) for the proposition that "an agency is bound by its regulations" and "[f]ailure to comply with regulations is a fatal flaw to administrative action." *Id.* at 491–92 (citations omitted).

The FDIC argues in response that it did indeed comply with its internal guidelines. The FDIC further argues that it is not bound by its internal guidelines because the guidelines do not have the force or effect of law.

The FDIC internal guideline at issue provides that "[i]f there are guarantors involved in an asset, the account officer should seek legal advice from the Legal Division to determine FDIC's rights to release or sell collateral security if consent from the guarantors cannot be obtained for the sale or release(s)." The Court finds that FDIC did in fact comply with its internal guidelines in the present case. The guideline instructs an account officer to seek legal advice before releasing collateral security if consent from a guarantor cannot be obtained. Under the internal guideline, the account officer working on the Associated Nursery account did not need to consult the legal department prior to releasing the collateral because, as was found above, Guinn, the guarantor of the note, had already given his consent to the release of the collateral.[7]

## IV. CONCLUSION.

The Court finds, for the reasons elaborated on above in its Opinion, that partial payment on the Associated Nursery debt restarted the running of the statute of limitations contained in 28 U.S.C. § 2415(a) against defendant-appellant Guinn, the guarantor of the Associated Nursery debt, and accordingly, the FDIC's cause of action against Guinn to collect on the Associated Nursery promissory note is not barred by the applicable statute of limitations. The Court further finds that, by the express terms of the continuing guaranty agreement signed by Guinn, Guinn consented to the release of the collateral securing the Associated Nursery debt. Therefore, the release of the collateral by the FDIC did not discharge Guinn from liability as guarantor of the Associated Nursery debt.

The judgment of the district court is hereby AFFIRMED.

---

the continuing guaranty agreement, the Court need not address the other arguments presented by the FDIC as to why the release of the collateral did not discharge Guinn from liability.

**7.** The Court expresses no view on the issue of whether in fact the FDIC internal guidelines do or do not have the force and effect of law and

the ramifications of such a determination. The Court did not have to resolve this issue in deciding the present appeal because the Court determined that, even if the internal guidelines do have the force and effect of law, the FDIC did not fail to follow its internal guidelines in the present case.