**CITICORP NORTH AMERICA, INC., Appellee,**

v.

**George W. THORNTON, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1997.
Filed March 4, 1998.

action.

Val E. Winter, York, for appellant.

Joel S. Todd, Philadelphia, for appellee.

Before FORD ELLIOTT, EAKIN and OLSZEWSKI, JJ.

EAKIN, Judge:

George W. Thornton appeals from an order entered in the Court of Common Pleas of York County (Kennedy, J., presiding), denying appellant's motion for judgment on the pleadings. We affirm.

The relevant facts were recounted by the trial court as follows:

On April 19, 1990, Citicorp North America, Inc., [ ] entered into a lease agreement with Thornton–White, Inc., whereby Thornton–White [ ] leased a Wang computer system for a term of sixty (60) months. Pursuant to the terms of the lease, basic rental payments in the amount of $1,087.02 were due to [sic] the commencement date of the lease (April 19, 1990) and on the same date in each consecutive month thereafter. The lease agreement was signed by H.M. Thornton in his capacity as Chief Administrative Officer of the Corporation. On that same date, [appellant] George W. Thornton, then President of Thornton–White, executed a personal guaranty to Citicorp [ ] to be primarily, directly and unconditionally liable for the obligations of Thornton–White [ ] should [Thornton–White] be deemed to be in default. Under both the Lease and the Guaranty, default was deemed to have occurred if [Thornton–White], inter alia, failed to make payments or filed a petition under any provision of the Bankruptcy Act. On December 5, 1990, [Thornton–White] filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of South Carolina.

[Citicorp] then notified [appellant] by letter on January 10, 1991, that [he] was in default of his obligations as personal guarantor and demanded payment in the amount of $59,483.98 from him as the "balance remaining on the [lease]." On or about November 20, 1991 [Thornton–White] made a subsequent (and final) partial payment to [Citicorp].... [Citicorp] filed suit in Pennsylvania on July 21, 1995[.]

Trial Court Opinion, 5/20/96, at 1–2.

On November 16, 1995, appellant filed a motion for judgment on the pleadings, alleging Citicorp's cause of action was barred by the statute of limitations; that motion was denied May 20, 1996.[1] On January 14, 1997,

---

**1.** The trial court subsequently amended the order to indicate it involves a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal would materially advance the ultimate termination of the matter. *See* 42 Pa.C.S

appellant petitioned the Superior Court for permission to appeal; we granted permission that same date.

Appellant now presents the following issue for our review: Does a partial payment by an obligor commence a new statute of limitations period with respect to a surety? If so, the trial court correctly determined the statute of limitations had not expired, and properly denied appellant's motion.

We apply the customary standard and scope of review, as stated in *Vetter v. Fun Footwear Co.*, 447 Pa.Super. 84, 668 A.2d 529 (1995):

> Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034 which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

*Id.*, 447 Pa.Super. at 87, 668 A.2d at 530–31 (citation omitted).

■ The underlying action was subject to the following statute of limitations:

> The following actions and proceedings must be commenced within four years:
>
> (7) An action upon a negotiable or nonnegotiable bond, note or other similar instrument in writing. Where such an instrument is payable upon demand, the time within which an action on it must be commenced shall be computed from **the later of either demand or any payment of principal of or interest on the instrument.**

§ 702(b). As the order denying a motion for judgment on the pleadings is not a final order, nor an interlocutory order appealable as of right, (*See* Pa.R.A.P. 301, 311), appellant was required

42 Pa.C.S. § 5525 (emphasis supplied). It has long been established that "[a] partial payment stops the running of the statute because it is an acknowledgment of the debt as an existing obligation, from which the law necessarily implies a promise to pay." *Barnes v. Pickett Hardware Co., Ltd.*, 203 Pa. 570, 572, 53 A. 378, 379 (1902); *see also Cole v. Lawrence*, 701 A.2d 987, 990 (Pa.Super.1997) (*rearg. denied* Nov. 18, 1997) ("In order for a partial payment to toll the statute of limitations, the payment must constitute a constructive acknowledgment of the debt from which a promise to pay the balance may be inferred").

■ As a general rule, however, a partial payment serves to restart the statute only as it applies to the debtor or obligor. *See Federal Deposit Ins. Corp. v. Associated Nursery Systems, Inc.*, 948 F.2d 233, 237 (6th Cir.1991). This rule is premised upon sound logic: "[A] guarantor's consent to the debtor's future conduct may not be presumed merely on the basis of the original guarantee." *Id.*, at 238 (citation omitted).

■ Nevertheless, parties may avoid the general rule by agreement. *See United States v. Rollinson*, 866 F.2d 1463, 1469 (D.C.Cir.), *cert. denied*, 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989). As a surety agreement is a contract, we turn to its language to determine the extent of the surety's rights and liabilities. *Lezzer Cash & Carry Inc. v. Aetna Ins. Co.*, 371 Pa.Super. 137, 144, 537 A.2d 857, 861, *alloc. denied*, 519 Pa. 666, 548 A.2d 256 (1988); *Associated Nursery Systems*, 948 F.2d at 237 (A guaranty contract defines the obligations and rights of both guarantor and creditor, and if the language is clear and unambiguous, the court must interpret it as written). *See National Bank of Chester County v. Thomas*, 220 Pa. 360, 363, 69 A. 813, 813 (1908). We will apply fundamental principles of contract interpretation as comprehensively set forth by our Supreme Court in *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982).

to obtain this certification, and to request permission for appeal. Having done so, this case is properly before us.

■ Whether a contract of guaranty is a continuing undertaking is a question of intention which must be gathered from the instrument itself, or from the course of dealings between the parties or from both. If it appears the parties contemplated a future course of dealing for an indefinite time, or a succession of credits to be given, the contract will be construed to be a continuing guaranty.

■ The relevant part of this surety agreement provides:[2]

It being understood and agreed that the liability of the undersigned hereunder shall be primary, direct, and in all respects unconditional. Undersigned jointly and severally unconditionally guarantee[s] to Citicorp North America, Inc. (herein "Beneficiary"), the full and prompt performance by Thornton–White, Inc., [ ] (herein "Obligor"), **of all obligations which Obligor presently or hereafter may have to Beneficiary** and payment when due of all sums presently or hereafter owing by Obligor to Beneficiary, whether arising by lease, note or otherwise ...

＊　　＊　　＊

**This shall be a continuing guaranty and indemnity and irrespective of the lack of any notice to or consent of [appellant], its obligations hereunder shall not be impaired in any manner whatsoever by any: (a) new agreements or obligations of [Thornton–White] with or to [Citicorp]; amendments, extensions, modifications, renewals or waivers of default as to any existing or future agreements or obligations of [Thornton–White].**

＊　　＊　　＊

Each of the Undersigned may terminate its obligations hereunder as to then future transactions between Beneficiary and Obligor by notice to Beneficiary by registered mail[.]

This agreement clearly and unambiguously demonstrates appellant's unbridled commitment to guarantee Thornton–White's obligation under the lease. Appellant's liabilities are specifically characterized as "unconditional" and "continuing", and "irrespective of the lack of any notice to or consent of [appellant], its obligations hereunder shall not be impaired in any manner whatsoever by any: (a) new agreements or obligations of [Thornton–White] with or to [Citicorp]; amendments, extensions, modifications, renewals or waivers." We find this compelling evidence of an intent to assume the capacity of a continuing and unconditional surety. Were this not true, appellant could have indicated as much in the contract, or simply withheld his signature. Moreover, because appellant was specifically permitted by the contract to terminate his obligations by notifying Citicorp via registered mail, but did not do so, he voluntarily exposed himself to continuing liability.

We acknowledge the result in *Federal Deposit Ins. Corp. v. Galloway*, 856 F.2d 112 (10th Cir.1988), and *Federal Deposit Ins. Corp. v. Petersen*, 770 F.2d 141 (10th Cir. 1985). In *Galloway* and *Petersen*, the distinguished Tenth Circuit Court of Appeals came to a contrary result, relying upon the general rule "that an acknowledgment by a principal debtor will not affect the running of the statute of limitations as to a guarantor." *Petersen*, 770 F.2d at 143. The Court noted "adopting [a contrary result] would deprive

---

2. Whether a contract constitutes one of "suretyship" or "guaranty" is governed by statute:

Every written agreement hereafter made by one person to another for the default of another shall subject such person to the liabilities of suretyship, and shall confer upon him the rights incident thereto, unless such agreement shall contain in substance the words: "This is not intended to be a contract of suretyship," or unless each portion of agreement intended to modify the rights and liabilities of suretyship shall contain in substance the words: "This portion of the agreement is not intended to impose the liability of suretyship."

8 P.S. § 1. The distinction is significant, as

[a] guarantor undertakes that another person will pay a debt or perform a duty and such person remains primarily liable. On the other hand, a surety undertakes to pay the debt or perform the obligation if the debtor fails to do so. In case of default the guarantor is secondarily liable while the surety is equally liable with the principal.

*Homewood People's Bank v. Hastings*, 263 Pa. 260, 263–64, 106 A. 308, 309 (1919). Although "guaranty" and "surety" are frequently used interchangeably, all agree appellant assumed the role of surety.

guarantors of meaningful protection from statutes of limitation." *Galloway,* 856 F.2d at 117.

We find more persuasive the Sixth Circuit Court of Appeals' reasoning in *Associated Nursery Systems,* 948 F.2d 233, and Judge Timbers' dissent in *Petersen,* in which he recognizes the acknowledgment of the debt did not constitute an extension or renewal of the loan, but "did constitute the undertaking of a new obligation to pay, one clearly encompassed by the broad language of the guarantee agreement." 770 F.2d at 145 (quoted in *Associated Nursery Systems,* 948 F.2d at 239).

We find the language of the underlying surety agreement similar to that in *Associated Nursery Systems,* and expressly adopt the rationale propounded by the Sixth Circuit Court of Appeals. Guided by the fundamental principles of contract law, we find appellant voluntarily assumed the role of a continuing and unconditional surety, and was sufficiently aware of any and all potential liabilities attendant thereto. Thus, Thornton–White's partial payment on November 20, 1991, started anew the statute of limitations with respect to both Thornton–White, as principal debtor, and appellant, as continuing and unconditional surety. *Id.* (finding statute of limitations started anew with respect to surety when principal debtor made partial payment due to broadly worded continuing guaranty agreement). See also *RTC Commercial Loan Trust v. Templeton,* 1997 U.S. Dist. LEXIS 13449 (W.D.Mich., Aug. 15, 1997).

Accordingly the order denying appellant's motion for judgment on the pleadings is affirmed.

Order affirmed.