J-A06030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SUBURBAN MANAGEMENT CO. INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BURKITT GROUP, INC., PAUL J. | : | |
| BURKITT,  AND DIANNE C. | : | |
| BROHOSKI F/K/A DIANE C. BURKITT | : | |
| | : | |
| Appellee | : | No. 2476 EDA 2019 |

Appeal from the Order Entered April 18, 2017
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  No. 2015-30106


| | | |
|---|---|---|
| SUBURBAN MANAGEMENT CO. INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BURKITT GROUP, INC., PAUL J. | : | |
| BURKITT, AND DIANNE C. | : | |
| BROHOSKI F/K/A DIANE C. BURKITT | : | |
| | : | |
| Appellees | : | No. 2477 EDA 2019 |

Appeal from the Order Entered February 19, 2019
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  No. 2015-30106


BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY KING, J.:                        **FILED MAY 22, 2020**

Appellant, Suburban Management Co. Inc., appeals from the orders

_____

* Former Justice specially assigned to the Superior Court.

entered in the Montgomery County Court of Common Pleas, which granted summary judgment in favor of Appellees, Paul J. Burkitt and Dianne C. Brohoski f/k/a Diane C. Burkitt. We affirm.

The relevant facts of this case are as follows. Appellees married in 1991 and divorced in 2007. During the marriage, Appellees were the principals of Burkitt Group, which operated a "Bounce U" franchise providing play and party settings for children. In May 2005, Appellant and Burkitt Group executed a commercial lease agreement ("the lease") for a property in Oaks, Pennsylvania. Burkitt Group agreed to lease the property from Appellant for a five-year term, from July 1, 2005 to June 30, 2010. The lease provided for monthly rent in the amount of $7,890.00, which would increase by two percent each year. In an addendum to the lease, Appellant granted Burkitt Group a renewal option for an additional five-year term at fair market rent.

Concurrent with the execution of the lease, Appellees entered into the following guaranty of lease ("the guaranty"):

> TO INDUCE SUBURBAN MANAGEMENT CO. INC. ("Lessor") to enter into a lease with PAUL J. BURKITT and DIANNE C. BROHOSKI ("Lessee")[1] for all that certain premises in the Suite 2420 at 99 Brower Ave. Oaks PA ("Leased Space") as

---

[1] The trial court noted that the introductory clause of the guaranty "defines the 'Lease' as a lease between [Appellant] and [Appellees], rather than between [Appellant] and Burkitt Group." (Trial Court Opinion, filed October 4, 2019, at 5 n. 2). The trial court concluded "the language in question was an obvious drafting error, and that the parties intended that the Lease under the Guaranty Agreement was the one between [Appellant] and Burkitt Group." (*Id.*)

more fully described in the Lease Agreement ("Lease"), and for good and valuable consideration, the undersigned, intending to be legally bound, guarantees to Lessor and becomes surety for the prompt performance,[2] as and when due, of all Lessee's obligations under the Lease. The undersigned hereby waives notice of the acceptance of this Guaranty and any notice of default by the Lessee, and consents and agrees that Lessor may at any time and from time to time in [its] discretion; (1) extend or change the time for performance of any of Lessee's obligations; (2) exchange, release or surrender any security held by it for the performance of Lessee's obligations; (3) settle or compromise with the Lessee; and (4) take or refrain from taking such other actions as Lessor may in its sole discretion deem to be in its best interest with respect to the lease, the Lessee and the Leased Space; all in such manner and upon such terms as Lessor may deem fit and without notice to or further assent from the undersigned, who agrees to be and remain bound by this Guaranty of the term of the … Lease and any extensions or renewals thereof.

The undersigned agrees that no promises, representations, agreements, conditions or covenants have been made relating to this Guaranty other than those contained herein and that no modifications of the terms hereof shall be binding on Lessor unless in writing signed by Lessor.

This Guaranty shall bind the undersigned and its successors and assigns, and the benefits hereof shall inure to Lessor, its successors and assigns.

_____

[2] "While both guaranty and surety agreements are agreements to be liable for the debt of another, the principal difference is that the creditor may look to the surety for immediate payment upon the debtor's default, without first attempting to collect the debt from the debtor, whereas the creditor must first seek payment from the debtor before going after a guarantor." *McIntyre Square Associates v. Evans*, 827 A.2d 446, 451 n. 7 (Pa.Super. 2003). Here, under the terms of the guaranty, Appellees became sureties. *See id.* *See also* 8 P.S. § 1 (stating every written agreement made by one person to answer for default of another shall subject such person to liabilities of suretyship, unless such agreement states in substance: "This is not intended to be a contract of suretyship").

(Lease, dated 5/4/05, at Exhibit D).

On November 16, 2010, Appellant and Burkitt Group executed an amendment to the lease ("the amendment").[3]  In the amendment, the parties acknowledged Burkitt Group was delinquent under the lease, and it owed over $35,000.00 to Appellant.  Consequently, the parties extended the lease term to October 31, 2011 and voided the five-year renewal option.  The parties also modified Burkitt Group's rent obligation "to include both a base amount, payable weekly, and a percentage rent under a formula based on Burkitt Group's gross sales at the premises, also payable weekly."  (Trial Court Opinion at 6).  "Upon an uncured default in the payment of any amount due, [Appellant's] remedies would include interest on the unpaid balance at the annual rate of 15% or 5% above the prime rate as listed in the *Wall Street Journal*, whichever is greater, together with attorney's fees."[4]  (**Id.**)

---

[3] Mr. Burkitt signed the amendment on behalf of Burkitt Group.

[4] The original lease contained the following remedies clause:

> The rent for the entire unexpired balance of the term of this lease, as well as all other charges, payments, costs, and expenses herein agreed to be paid by the Lessee, or at the option of Lessor, any part thereof, and also all cost and officer's commissions including watchmen's wages and further including five percent chargeable by Act of Assembly to the Lessor, shall, in addition to any and all installments of rent already due and payable and in arrears and/or any other charge or payment herein reserved, included or agreed to be paid by the Lessee which may be due and

On November 16, 2015, Appellant filed a complaint against Burkitt Group and Appellees. The complaint alleged Burkitt Group had breached the lease by failing to pay rent and other charges. Appellant also claimed Appellees were personally liable pursuant to the guaranty. After the close of pleadings, the court entered a discovery management conference order on August 3, 2016. The order included handwritten notations with the following deadlines: 1) discovery to be completed by November 30, 2016; 2) all dispositive motions to be filed by December 15, 2017; and 3) all responses to dispositive motions to be filed by January 15, 2017.[5] On December 22, 2016, Ms. Brohoski filed a summary judgment motion. Following oral argument, the court granted Ms. Brohoski's motion on April 18, 2017. Specifically, the court did "not find a clear and unambiguous agreement demonstrating [Ms. Brohoski's] 'unbridled commitment to guarantee [her] obligation under the lease.'" (Order, filed 4/18/17, at 2 n. 1) (internal citation omitted).

On November 2, 2017, Mr. Burkitt filed a motion for leave to file a

_____

payable and in arrears, be taken to be due and payable and in arrears as if by the terms and provisions of this lease, the whole balance of unpaid rent and other charges, payments, taxes, costs and expenses were on that date payable in advance ….

(Lease at ¶ 14(d)(1)).

[5] The court later acknowledged "[t]he obvious intention of the Order was to require dispositive motions to be filed by December 15, 2016, not 2017." (Order, filed 10/24/18, at 1 n. 1).

summary judgment motion. Mr. Burkitt argued the court had yet to schedule trial, and granting him leave to file a summary judgment motion would not create an unreasonable delay:

> Thus, inasmuch as the factual and legal predicate for the [c]ourt's granting of summary judgment in favor of [Ms. Brohoski] is directly applicable, if not identical, to the factual and legal issues extant with [Mr. Burkitt], it would be a waste of judicial resources to impose a trial on factual and legal issues that should otherwise be disposed of on a summary basis.

(Motion, filed 11/2/17, at ¶ 21). On October 24, 2018, the court granted Mr. Burkitt's motion and ordered him to file a summary judgment motion within seven days.

On October 26, 2018, Mr. Burkitt filed his summary judgment motion. Appellant filed a response and cross-motion for summary judgment on November 26, 2018. By order dated February 15, 2019 and entered February 19, 2019, the court granted Mr. Burkitt's summary judgment motion and denied Appellant's cross-motion.

The trial court summarized the subsequent procedural history as follows:

> On March 14, 2019, [Appellant] filed separate Notices of Appeal to the Superior Court from the orders of April 18, 2017, and February 15, 2019, granting summary judgment in favor of [Appellees]. The appeals were docketed in the Superior Court at Nos. 809 and 819 EDA 2019. In each appeal, on April 17 and 30, 2019, the Superior Court entered an Order and Rule to Show Cause why the appeal should not be dismissed for lack of a final order, in view of the fact that [Appellant's] claim against Burkitt Group remained pending in [the trial c]ourt. The Superior Court

quashed both appeals by Orders dated June 19, 2019.

> In the meantime, in late July 2019, counsel for [Appellant] and Burkitt Group submitted to [the trial c]ourt a Stipulation for the entry of judgment against Burkitt Group in the amount of $269,328.65. The Stipulation was approved as an Order … dated August 5, 2019 (and docketed August 6, 2019). On August 7, 2019, with all claims now determined, [Appellant] again filed two Notices of Appeal to the Superior Court from the two Orders granting summary judgment in favor of [Appellees].

(Trial Court Opinion at 4).

On August 13, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed its Rule 1925(b) statement on August 29, 2019. On September 30, 2019, this Court consolidated Appellant's appeals *sua sponte*.

Appellant now raises two issues for our review:

> WHETHER THE TRIAL COURT ERRED IN FAILING TO ENFORCE THE PERSONAL GUARANTY OF LEASE AGAINST APPELLEES … WHO CONSENTED AND AGREED TO BE PERSONALLY RESPONSIBLE FOR THE EXTENSION OF THE LEASE IN THE AMENDMENT TO THE LEASE, SINCE, PURSUANT TO THE EXPLICIT TERMS OF THE GUARANTY, APPELLEES, WHO HAD WAIVED ACCEPTANCE OF THE GUARANTY AND WAIVED ANY NOTICE OF DEFAULT, CONSENTED AND AGREED, WITHOUT FURTHER NOTICE OR ASSENT, TO ANY EXTENSION OF THE LEASE, OR ANY RENEWAL OF THE LEASE?

> WHETHER THE TRIAL COURT ERRED IN ALLOWING … PAUL J. BURKITT TO FILE A MOTION FOR SUMMARY JUDGMENT ALMOST A YEAR AFTER THE EXPIRATION OF THE COURT ORDERED DATE TO DO SO?

(Appellant's Brief at 5).

Our standard of review of an order granting summary judgment requires

- 7 -

us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of America*, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations omitted). Our scope of review is plenary. *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary judgment:

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted

to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted).

In its first issue, Appellant contends Appellees signed the guaranty, which was "broad, continuing and unrestricted." (Appellant's Brief at 26). Pursuant to the express terms of the guaranty, Appellant maintains Appellees assumed the risk of an extension or renewal of the lease, and Appellees "consented explicitly to material modifications of the relationship between [Appellant] and the Burkitt Group." (***Id.*** at 31). Appellant insists Pennsylvania courts have enforced personal guaranties under similar circumstances. Appellant concludes the trial court should have enforced the guaranty against Appellees, and it erred in granting the summary judgment motions. We disagree.

"Customarily, a suretyship arrangement arises when a creditor refuses to extend credit to a debtor unless a third party (the surety) agrees to provide additional security for repayment of the debt by undertaking the debtor's obligation to the creditor if the debtor fails to perform." ***J.F. Walker Co.,***

- 9 -

*Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1273 (Pa.Super. 2002)

(quoting *Continental Bank v. Axler*, 510 A.2d 726, 729 (Pa.Super. 1986)).

> Cognizant of the problems posed by the three-party composition of suretyships, Pennsylvania courts have uniformly recognized that where the creditor and the debtor materially modify the terms of their relationship without obtaining the surety's assent thereto, the surety's liability may be affected. A material modification in the creditor-debtor relationship consists of a significant change in the principal debtor's obligation to the creditor that in essence substitutes an agreement substantially different from the original agreement on which the surety accepted liability. Where, without the surety's consent, there has been a material modification in the creditor-debtor relationship, a gratuitous (uncompensated) surety is completely discharged. A compensated surety is discharged only if, without the surety's consent, there has been a material modification in the creditor-debtor relationship and said modification has substantially increased the surety's risk.[6]
>
> * * *
>
> Nevertheless, material modifications in the creditor-debtor relationship will not serve to discharge the surety where the surety has given prior consent to such material modifications as part of the suretyship contract. To determine whether a surety has consented to a material modification, the suretyship contract must be given effect according to its own expressed intention as gathered from all the words and clauses used, taken as a whole, due regard being had also to the surrounding circumstances.

*Evans, supra* at 452 (internal citations and quotation marks omitted). *See also Citicorp North America, Inc. v. Thornton*, 707 A.2d 536, 539

---

[6] The trial court classified Appellees as compensated sureties, "[b]ecause there is evidence that [Appellees], who were married at the time of the Lease and Guaranty of Lease, were owners of Burkitt Group[.]" (Trial Court Opinion at 7).

(Pa.Super. 1998) (holding surety agreement clearly and unambiguously demonstrated appellant's unbridled commitment to guarantee lessee's obligation; agreement characterized appellant's liabilities as unconditional, continuing, and unimpaired by amendments, extensions, renewals, regardless of notice or consent).

Instantly, the trial court determined the amendment to the lease constituted a material modification:

> [T]here is no doubt that the Amendment materially increased the risk assumed by [Appellees] under their Guaranty of Lease. As modified by the Amendment, the rent included not just base rent but also a percentage rent calculated on the basis of the sales realized at the leased premises. In addition, upon default, the lessee was liable for interest at 15% per annum and attorney's fees. The Amendment thus substantially increased the surety's risk.

(Trial Court Opinion at 8-9) (internal citation and quotation marks omitted).

Further, the court found Appellees did not provide prior consent to material modifications. Specifically, the court compared the instant guaranty to the one executed in **Thornton, supra**:

> The guaranty language in **Thornton** stands in stark contrast to the language of the Guaranty of Lease in the present case. The Guaranty of Lease does not guaranty all obligations which Obligor presently or hereafter may have, nor does it provide for the continuing enforceability of the guaranty notwithstanding any … new agreements or obligations of [Burkitt Group] with or to [Appellant]. To the contrary, the guaranty is limited to [Burkitt Group's] obligations under the Lease. And instead of the sweeping consent language in the guaranty in **Thornton**, the Guaranty of Lease in the present case limits the guarantors' consent to four specific actions that [Appellant] might take:

(1) extend or change the time for performance of any of Lessee's obligations; (2) exchange, release or surrender any security held by it for the performance of Lessee's obligations; (3) settle or compromise with the Lessee; and (4) take or refrain from taking such other actions as Lessor may in its sole discretion deem to be in its best interest with respect to the lease, the Lessee and the Leased Space.

Clearly, the first three items do not cover the addition of percentage rent or the provision for recovery of interest and attorney's fees. The meaning of the fourth item, consenting to actions that [Appellant] may take in its best interest, is unclear, but it surely is not so definitive as to clearly and unambiguously demonstrate [an] unbridled commitment to cover the increased monetary obligations of Burkitt Group under the Amendment.

\* \* \*

Notably, [Appellant] could have avoided this result by requiring [Appellees] to expressly consent to the Amendment when it was agreed to by Burkitt Group or to enter into a new guaranty agreement. If it failed to make such a demand, it cannot now complain of the resulting discharge of the guarantors by operation of law. Alternatively, if it did make such a demand and then decided to proceed with the Amendment in the face of the guarantors' refusal to consent, then it must accept the consequences of its decision.[4]

> [4] [Mr. Burkitt's] signature [on] the Amendment in his capacity as a corporate owner or officer of Burkitt Group does not constitute consent in his individual capacity as guarantor. In **Evans**, the Lease Amendment and Extension Agreement was signed by the president of the corporate lessee, … but that signature was not held to be a consent for purposes of his personal guaranty.

(Trial Court Opinion at 10-11) (internal citations and quotation marks omitted).

- 12 -

Here, the amendment modified the amount of rent to include a minimum monthly payment and a "percentage rent" to be calculated based on Burkitt Group's gross sales. The amendment also contained new terms regarding default, including additional requirements for Burkitt Group to pay interest and counsel fees. Taken together, the new terms in the amendment increased Appellees' risk and constituted a material modification in the creditor-debtor relationship. ***See Evans, supra***. ***See also Magazine Digest Pub. Co. v. Shade***, 330 Pa. 487, 199 A. 190 (1938) (explaining original contract required magazine distributor to pay fourteen and one-half cents per copy to publisher; change requiring distributor to pay fifteen cents per copy was "material alteration," which discharged guarantors of obligations to distributor).

Additionally, the guaranty did not include broad language demonstrating Appellees' consent to the material modifications contained in the amendment. As the trial court correctly noted, the guaranty expressly set forth four circumstances under which Appellees provided consent for Appellant to act. The four enumerated circumstances did not include Appellees' consent to all forms of material modification, including future changes to the lease's financial terms. ***See Reliance Ins. Co. v. Penn Paving, Inc.***, 557 Pa. 439, 734 A.2d 833 (1999) (holding parties' continuing indemnification agreement did not contain any language constituting consent to material increase in risk of liability to appellants or language expressly waiving notice of material modification in risk of liability; waiver provisions also failed to expressly refer

to material modification). ***Compare Axler, supra*** (concluding sureties signed contract that allowed creditor to make material modification without notice to surety, and sureties would be obligated for liabilities of any successor business). Based upon the foregoing, the court properly entered summary judgment in favor of Appellees. ***See Chenot, supra***.

In its second issue, Appellant asserts Mr. Burkitt's untimely filing of a summary judgment motion violated Pa.R.C.P. 1035.2. Further, Appellant contends Mr. Burkitt untimely filed his summary judgment motion after the deadline set forth in the court's August 2016 discovery management conference order. Appellant acknowledges the August 2016 order contained an erroneous deadline date, but "the court's intention [was] to have all dispositive motions filed on or before December 15, 2016." (Appellant's Brief at 32). Appellant concludes the trial court erred as a matter of law in granting Mr. Burkitt's motion for leave to file a summary judgment motion. We disagree.

Rule 1035.2 provides, in pertinent part:

**Rule 1035.2.  Motion**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1)    whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2)    if, after the completion of discovery relevant

> to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.
>
> *     *     *
>
> **Explanatory Comment—1996**
>
> *     *     *
>
> New Rule 1035.2 provides that a party may move for summary judgment after the "relevant" pleadings are closed and, in order **to provide discretion** in the lower court, within such time so as not to "unreasonably" delay the trial.

Pa.R.C.P. 1035.2 (emphasis added).

Instantly, the trial court acknowledged the fact that the discovery management conference order provided an incorrect deadline for the filing of dispositive motions:

> It is the usual practice of this [c]ourt to dismiss motions for summary judgment that are untimely under a case management order. The instant case, however, presented the highly unusual situation where a motion was filed **within the deadline** as literally construed, although not as construed in accordance with its apparent intention. Combined with this circumstance was the fact that [Mr. Burkitt's] Motion for Summary Judgment was made on the **identical grounds** on which [Ms. Brohoski] had already been granted summary judgment.

(Trial Court Opinion at 11-12) (emphasis in original). Given the court's discretionary authority to manage its trial schedule, it opted to allow Mr. Burkitt to file a summary judgment motion.

Here, the court's decision to allow Mr. Burkitt to file a summary

judgment motion that did not comply with the "apparent intention" of the discovery management conference order did not, by itself, constitute a violation of Pa.R.C.P. 1035.2 or an abuse of discretion. *See Robertson v. Port Authority of Allegheny County*, 144 A.3d 980 (Pa.Cmwlth. 2016) (explaining mere fact that summary judgment is sought on day of trial does not require that trial court deny motion; rather, issue is whether plaintiff has received full and fair opportunity to respond to motion); *Schreck v. North Codorus Tp.*, 559 A.2d 1018 (Pa.Cmwlth. 1989) (concluding summary judgment motion was not untimely, even though it was not filed until almost three years after completion of discovery; case had not yet been listed for trial, and there was no evidence that motion was filed to delay trial).[7] Because Mr. Burkitt raised the same issues as Ms. Brohoski, and Appellant received a full opportunity to respond, Appellant is not entitled to relief on its second issue. *See id.* Accordingly, we affirm.

Orders affirmed.

---

[7] *See also Petow v. Warehime*, 996 A.2d 1083, 1089 n.1 (Pa.Super. 2010), *appeal denied*, 608 Pa. 648, 12 A.3d 371 (2010) (stating: "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/20